Ross *v.* Morrimac Veneer Co.

[92 South 823, No. 22725.]

1. CONTRACTS. *Contract in form of letter addressed to seller and signed by it not unilateral.*

A contract in the form of a letter written the M. Company by defendant and containing defendant's agreement to take 1,500,000 feet of logs at $42 (shown by the evidence to mean $42 a thousand) with-

in 18 months, and signed by the M. Company, was not unilateral or wanting in mutuality, as the obligation to deliver the logs might be implied from the intention of the parties and the consideration on which the expressed obligation to purchase was based, and the M. Company's intention to be bound was clear from the fact that it accepted and signed the offer, especially where an assignee partly performed the contract.

2. Assignments. *Assignment of interest not insufficient because of use of word "sells" instead of "assigns."*

An instrument whereby one having a contract to sell and deliver a certain quantity of logs sold part of such contract to another party, who obligated himself to perform such part of the contract by delivering 500,000 feet of the logs, was not insufficient as an assignment because it used the word "sells" instead of "assigns."

3. Assignments. *Contract held assignable by seller.*

A contract to furnish 1,500,000 feet of logs at a specified price within 18 months was not personal or peculiarly individual so as to be unassignable.

4. Assignments. *Assignment of interest in contract held effectual when accepted by buyer.*

An assignment of a part interest in a contract to furnish 1,500,000 feet of logs was effectual where it was agreed to and accepted by the buyer through telephone communications and letters and the actual acceptance of and payment for numerous cars of logs delivered to it by the assignee.

5. Assignments. *Assignment of interest in contract held not to create subagency.*

An instrument whereby one having a contract to furnish a specified quantity of logs sold to another the right to perform the contract to the extent of 500,000 feet of the logs did not create a mere subagency to carry out the contract for the original contractor where all parties understood that he had purchased a one-third interest in the contract, and he thereafter dealt directly and independently with the buyer with the expectation of profit, with the consent and understanding of the buyer.

6. Evidence. *Oral agreement that buyer might reject written contract at any time inadmissible.*

Evidence of an oral agreement made contemporaneously with a written contract to purchase logs that the buyer should have a right to reject the contract at any time it desired was properly excluded as contradicting the terms of the written contract.

Appeal from chancery court of Hinds county.

Hon. V. J. Stricker, Chancellor.

Suit by J. L. Ross against the Morrimac Veneer Company. From a decree dismissing the bill, plaintiff appeals. Reversed. Judgment rendered for plaintiff, and case remanded.

*W. E. Morse,* for appellant.

The first question to be considered in this case is, whether or not the contract between the Morrimac Veneer Company and the Henry Maley Lumber Company was assignable. The general rule laid down by the United States supreme court, the court of last resort in this country, Legal Treaties, as J. C. J. and R. C. L. Pomeroy, Equity and Text writers; as Story and Lawson seems to be that executory contracts are assignable unless it involves personal confidence, personal service, or the assignment is forbidden or unauthorized by statute or where the parties expressly make it non-assignable by the terms of the instrument.

This precise question seems never to have been presented to this court. We have assignments and partial assignments but no assignment of executory contracts. We will therefore have to go outside of our state court for precedents. It is a question that seems to be too well settled to admit of dispute, but in case there is any doubt we submit the following authorities: The test of assignability is whether or not it would survive and pass to the personal representative of a decedent. If it would so survive, it may be assigned, so as to pass an interest to the assignee, 5 C. J. 850. See note Am. and Eng. Case, 1 Am. case, 854, which is an exhaustive note on the subject of assignability of executory contracts. Contracts silent on the subject are generally assignable. *Standard Sewing Machine Co.* v. *Smith,* 152, page 38, 51 Mont. 245; *Smith* v. *Craig,* 105 N. E. 798, 211 N. Y. 456.

The rule settled by the decisions of the supreme court is that a contract by which one party became obligated to the other is assignable by the latter unless there is something in the terms or nature of the contract which evidences an intention of the parties that it shall not be assignable. (*American Bond & Trust Co.* v. *Q. S. W. P. Co.,* 124 Fed. 866, 60 C. C. A. 52; *Horst* v. *Rolhms,* 84 Fed. 566, 44 L. Ed. 953. In other words, the law is too well settled to admit of dispute that an executory contract is assignable. *Find* v. *Henderson,* 74 Miss. 8, 19 So. 892.

*Assignability of this Contract.* The legal proposition of executory contract being assignable, having been established, we then consider whether or not the contract we have here under consideration is assignable or whether or not it falls within any one of the exceptions, and to ascertain this we must look to the contract itself.

The terms of the contract do not prohibit a transfer or assignment of the whole or a part of the contract. The assignment is not prohibited by statute. The contract is not one calling for personal skill, etc., as employment of a physician, musician, actor; the contract is with a corporation and necessarily could not be personal. *Pulaski Stave Co.* v. *Miller Creek Lumber Co.,* 138 Ky. 374, *Bonding & Trust Co.* v. *Baltimore and O. S. Ry. Co.,* 124 Fed. 866, 60 C. C. A. 52; Arkansas case, 135 S. W. 334, *Roberts Cotton Oil Company* v. *F. E. Morse and Co.*

The best reasoned case that I have found dealing with assignment of executory contracts is to be found in 15 Ann. Cases, 363, in a case styled: "*Atlantic and N. C. R. R. C Co.* v. *Atlantic and N. C. Company,* 147 N. C. 368; *Adams* v. *Wadhams,* 40 Barb. (N. Y.) 225; *Comstock* v. *Hitt,* 37 Ill. 542; *Biggers* v. *Matthewes,* 147 N. C. 299, 61 S. E. 53.

*Partial or Equitable Assignments.* We think that we have fully demonstrated that this contract was simply a commercial contract, one that could be assigned. This brings us to the proposition that if this contract was assignable in whole that it was assignable in part. The state of Mississippi has recognized partial assignments in

the case of *C. W. Hutchinson, Gdn.,* v. *L. Simon et al.,* 57 Miss. 628; *Moody* v. *Kyle,* 34 Miss. 506; *Fitch* v. *Stamps,* 6 How. 487; 2 Story Eq. Jur., 1044; *Lanigan* v. *Bradley,* 50 N. J. Eq. 210, 24 Atl. 502.

Indiana holds that a part interest in a written contract is assignable in equity. *Wood* v. *Wallace,* 24 Ind. 226; *Graves* v. *Ruby,* 24 Ind. 418. Partial assignments are upheld by the authorities cited in R. C. L., sec. 27, of assignments 2 R. C. L., page —, the rule being stated.

A partial assignment of a chose in action is enforceable in equity, although the debtor has not given his assent, provided that all of the parties in interest are before the court, so that the rights of each in the fund may be determined in one suit and settled by one decree; An equitable assignment of a part of a debt either actually or potentially in existence is valid and vests an equitable interest in the assignee so that, after notice to the debtor he is bound to apply the funds according to the terms of the assignment, regardless of the assent or wishes of the debtor. The note in Ann. Cas. 1912A, page 673, shows the stand of the different courts on the question of partial assignments. *Palmer* v. *Palmer,* 91 Atl. 281; *Exchange Bank* v. *McLoon,* 73 Me. 498, 40 Ann. Rep. 388.

*R. H. and J. H. and Fulton Thompson,* for appellee.

The writer knew nothing of this case until he read the record after it had been filed in this court. The first thought that came to his mind after reading Exhibit "A" to the bill was that the pretended contract was and is without legal effect and is non-enforcible because it is wholly unilateral. While the cancellation of the previous contract between the parties mentioned in the writing may have been a consideration for its execution it can in no other way aid or support the writing as a contract. If the writing be valid at all it is effectual only as a cancellation of the old contract. It will be observed that the Lumber Company did not bind itself in any way; it did not assume any

obligation to deliver logs to the Veneer Company and it could not have been compelled to deliver logs to the Veneer Company nor would it have been liable under the alleged contract for damages because of a total or partial failure to deliver them. In this respect the so called contract was wholly unilateral. *Kolb* v. *Bennett Land Co.,* 74 Miss. 567; *Taylor* v. *Barbour,* 90 Miss. 888.

If by any sort of reasoning the complainant can be held to have been, as he claims, an assignee of a part of the contract, Exhibit "A," he can have no greater right under the unilateral contract than his alleged assignor, the Lumber Company had. If the contract was unenforcible by the Lumber Company, of course, it cannot be enforced by the complainant. If complainant were an assignee he was under no more duty to furnish logs to the Veneer Company than was the Lumber Company under such duty by the alleged contract, Exhibit "A."

If anything passed to complainant from the Lumber Company by the use of the word "sells" it was nothing more than the right to deliver logs to the Veneer Company in order to perform in part the assumed obligations of the Lumber Company to the Veneer Company; there was no sale, in whole or in part, of the original contract, Exhibit "A" to the bill of complaint, or of anything due or to become due under it.

The Veneer Company was not a party to the contract (Exhibit "B" to the bill of complaint) and is not bound by its terms, whatever they mean; its terms do not purport to bind our client. The obligations assumed by the complainant in and by said contract (Exhibit "B") do not bind him in any way to the Veneer Company; the complainant's obligations therein assumed were alone to the Lumber Company. *Whitney* v. *Cowan,* 55 Miss. 626.

The complainant does not claim that the contract, Exhibit "B" was a perfect assignment by the Lumber Company to him of the contract between the Lumber Company and the Veneer Company. His erroneous claim is that it was an assignment of a part of that contract, and he fur-

ther erroneously claims as we think that such an assign-
ment is valid and enforcible in equity as against both the
assignor and the debtor.

We do not understand that even in equity a partial as-
signment is valid against the debtor or obligor of the con-
tract so assigned who has fully paid the debt or performed
his obligation to his original creditor, or persons to whom
he bound himself, unless he has acknowledged the assign-
ment and promised to pay or perform his obligation to the
assignee.

*Answer to Appellant's Brief.* The arguments we have
already made in the preceding pages of this brief very
largely answer the brief filed by the solicitors for the ap-
pellant. However, we will make some further observation
in the way of a reply. The appellant tells us in his brief
that the main question involved in this case is whether the
alleged contract, Exhibit "A" to the bill of complaint, is
an assignable one. This is to beg the question involved
in the case, because, so far as the question of an assign-
ment is concerned the real question is, was the alleged con-
tract Exhibit "A" to the bill of complainant assigned?
We say not.

We do not deny the general proposition that the alleged
contract, Exhibit "A" to the bill of complaint, was as-
signable. It certainly was assignable by the consent of
the Veneer Company, but a very different propo-
sition is presented when it is claimed that said alleged
contract could be assigned in part without the
consent of the Veneer Company. An assignment in
part by such consent would have been equivalent to a
separation of the contract, a modification of it, reducing
the number of feet of logs to be delivered, if any were to
be delivered by the Lumber Company, and the making of
a new contract between the Veneer Company and the com-
plainant for the delivery of a number of feet of logs which
might be agreed between the parties, less the whole amount
of the logs specified in Exhibit 'A." The quotation in ap-
pellant's brief from Pomeroy on Equity Jurisprudence,

1280, found on page 25 of appellant's brief, is adverse to his contentions.

There is a privity of a contract between the landlord and the assignee of a lease, but none between the landlord and a sub-lessee. If there be any analogy a sub-letting of a part of a contract is shown by the law of landlord and tenant not to be an assignment of the lessee.

A good deal is said in the brief of the appellant the object of which is to base thereon a claim that the Veneer Company ratified an alleged assignment of a part of the contract, Exhibit "A." To this contention there are two perfect answers: first, there was no assignment of any part of the contract to be ratified; and second, nothing was done or said by the Veneer Company, or any representative of it, which is not entirely consistent with the fact that the contract had not been assigned, in whole or in part, and that the complainant in delivering logs to the Veneer Company was acting as sub-contractor or agent of the Lumber Company.

The brief of opposing counsel assumes that there was an assignment of a one-third interest in the contract, Exhibit "A," by the Lumber Company to the complainant. This court will not find any warrant in this record, either in the pleadings or proof, to maintain this position taken by the appellant.

Holden, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court dismissing the bill of appellant, J. L. Ross, against the appellee Morrimac Veneer Company, in which appellant sought to recover damages for loss on account of the breach of a contract wherein appellee agreed to purchase from appellant five hundred thousand feet of gum logs at forty-two dollars per thousand. The chancellor based his decree of dismissal upon the ground that appellant had no right of action by virtue of the contract sued upon.

The case is simply this: The appellee Veneer Company in February, 1920, agreed to purchase one million five hundred thousand feet of gum logs from the Henry Maley Lumber Company at a price of forty-two dollars per thousand feet delivered. Subsequently, in July, 1920, the Henry Maley Lumber Company assigned to the appellant, Ross, a one-third interest in the contract above mentioned; that is to say, Ross for a valuable consideration obtained from the Maley Company the right to deliver and receive pay for five hundred thousand feet of gum logs at forty-two dollars per thousand from the appellee Veneer Company. A few days after this assignment was executed and delivered, the Veneer Company was notified of the assignment by the Maley Company, and the appellant, Ross, began to fill the contract by delivering several carloads of the logs to the Veneer Company. The Veneer Company accepted and paid for the logs, and impliedly, if not expressly, consented and agreed that Ross should carry out that part of the contract assigned to him by the Maley Company.

After Ross had delivered more than one hundred and fifty thousand feet of logs to the appellee Veneer Company, the delivery being made in cars at different times, the Veneer Company refused to receive and accept the balance of the logs under the contract. Ross tendered the balance of the logs, and after numerous notices and demands, all of which were refused by the Veneer Company, Ross filed this suit to recover the value of the balance of the logs undelivered under the contract, less the price that he received for the logs which he had to sell upon the open market. There seems to be no dispute as to the loss by Ross on account of the breach of the contract by the Veneer Company.

The written contract between the Henry Maley Lumber Company and the Morrimac Veneer Company is as follows:

"Henry Maley Lumber Company, Jackson, Mississippi: It is agreed that the Morrimac Veneer Company is to take

one million five hundred thousand feet No. 1 gum logs, eighteen inches and up at forty two dollars delivered at our mill, within eighteen months from date.

"It is understood that this contract is to cancel contract we had with you July 1, 1919. [Signed] Morrimac Veneer Company, by R. N. English, Mgr. [Signed] Henry Maley Lumber Co., by C. E. Maley."

It will be observed this contract on its face obligates the Veneer Company to purchase the logs, but does not require the Maley Company to deliver the logs to the Veneer Company. And the point is made here, not in the lower court, by the appellee Veneer Company, that the contract is unilateral and unenforceable, which proposition we shall discuss later.

The assignment of a one-third interest in the contract by the Maley Company to appellant, Ross, is as follows:

"This agreement made and entered into on this the 12th day of July, 1920, by and between C. E. Maley, party of the first part, of Jackson, Miss., and J. L. Ross, of Pelahatchie, Miss., party of the second part, witnesseth:

"That whereas, the party of the first part contracted to sell and deliver to the Morrimac Veneer Company a certain lot of gum timber in logs, to be delivered within a period of eighteen months from February 11, 1920, at a price of forty-two dollars per thousand f. o. b. cars at Jackson, Miss., said timber to be practically clear, eighteen inches in diameter and up;

"And whereas, the party of the second part desires to purchase from the party of the first part the right to fulfill a part of said contract between the party of the first part and the Morrimac Veneer Company, by supplying five hundred thousand feet of the timber covered by the same contract between the said first party and the said Morrimac Veneer Company:

"Now, therefore, in consideration of one thousand dollars paid and to be paid as follows, to-wit: two dollars per thousand as logs are delivered on cars—the party of the first part hereby sells to the party of the second part,

and the party of the second part obligates himself to perform a part of the said contract between the party of the first part and the Morrimac Veneer Company by delivering to the Morrimac Veneer Company five hundred thousand feet of Gum timber as provided for according to the terms of the said contract between the first party and the Morrimac Veneer Company.

"Executed in duplicate by the parties hereto the day and date first above written. Henry Maley Lumber Company, Party of the First Part. J. L. Ross, Party of the Second Part."

It will be noted this instrument provides that the Maley Company "hereby sells to" Ross the one-third interest in the contract. And the appellee contends that this is an invalid assignment of the interest because it uses the words "sells" instead of "assigns," and further that the contract between the Maley Company and the Veneer Company is unassignable, and also that the instrument merely creates a subagency in Ross to carry out the contract for the Maley Company, and that no contractual or binding relation, such as would warrant this suit, is created between Ross and the Veneer Company. We shall discuss these contentions later on.

The main point in the case is whether or not the contract between the Henry Maley Lumber Company and the Morrimac Veneer Company is unilateral and unenforceable, or bilateral by virtue of express or implied mutuality. And when we have decided this question we do not think the other problems presented are troublesome to solve.

Now let us examine the contract and ascertain the intention of the parties who signed it. It is clear the Veneer Company agreed to purchase a certain amount of No. 1 gum logs eighteen inches and up in size at forty-two dollars per one thousand feet delivered at the mill within eighteen months from date. The undisputed testimony in the case shows that the price of forty-two dollars means forty-two dollars per one thousand feet. So it is plain the Veneer Company obligated itself to purchase on the terms

mentioned. This contract seems to be in the form of a letter to the Maley Company in which, we will say, the Veneer Company offered to purchase the logs on the terms mentioned therein. The Maley Company accepted the offer by signing the letter or contract. And the evidence shows that the assignee Ross, appellant, entered upon the performance of the contract by delivering several carloads of the logs to the Veneer Company after the assignment to him.

We are of opinion the contract is not unilateral, but the mutuality is implied, and the obligation on the part of the Maley Company to deliver the logs was reciprocal; while mutuality is not shown expressly on the face of the contract, yet the obligation to deliver may be implied from the intention of the parties and the consideration on which the expressed obligation to purchase is based.

In other words, in such a contract the mutual obligation may be implied by inferences drawn from the other and remaining terms and conditions of the contract as to the intent of the parties. And we do not hesitate to say it is clear in the case before us that, when the Maley Company accepted and signed the offer made by the Veneer Company, the Maley Company intended to be bound to carry out the terms by delivering the logs as provided in the contract. Moreover, acceptance and part performance would create mutuality. Therefore it is bilateral and enforceable by the Maley Company or its assignee, appellant, Ross. 13 C. J. section 180, p. 334; 6 R. C. L., section 95, pp. 688, 689; *Pullman Co.* v. *Meyer*, 195 Ala. 397, 70 So. 763; *L. & N. Railroad* v. *Coyle*, 123 Ky. 854, 97 S. W. 772, 99 S. W. 237, 8 L. R. A. (N. S.) 433, 124 Am. St. Rep. 384.

The proposition advanced by counsel for appellee that the use of the word "sells" instead of "assigns" is insufficient to pass an interest in the contract we think is without merit, because the two words for all practical purposes in the contract mean the same thing, and it was ample to convey the interest intended to be transferred.

As to the point made that the Maley contract was unassignable in part, we think is not well taken for two reasons: First, the contract is not personal or peculiarly individual, but is one for the delivery of common marketable material fully and definitely described and priced; but, if we be mistaken in this, then, second, the assignment of the one-third interest in the contract in this case was impliedly, if not expressly, agreed to and accepted by the Veneer Company through telephonic communications and letters, and the actual acceptance of the numerous cars of logs delivered by appellant, Ross, to the Veneer Company, and paid for to Ross by the Veneer Company, after the assignment was made.

Regarding the point made by appellee that the assignment only created a subagency in Ross to carry out the contract for the Maley Company, we cannot agree with this contention, because it is plain that Ross purchased and paid for the one-third interest in the contract, as was understood by all parties, and thereafter dealt directly and independently with the Veneer Company in carrying out the contract, with an expectation of profit, which the Veneer Company consented to and fully understood, as shown by the record.

Many of the points urged here were not presented in the lower court, neither in the pleadings or by the proof or argument; but it is contended by the appellee that the lower court erred in not permitting the appellee to show that there was an oral agreement made contemporaneously with the written contract between it and the Maley Company wherein it was understood that the Veneer Company should have a right to reject the contract at any time it might desire. We think the lower court was correct in excluding the oral understanding which contradicted the terms of the written contract.

We observe from the opinion of the chancellor in the record that his decision dismissing the bill was grounded upon the theory that appellant, Ross, only occupied the position of a subagent of the Maley Company because the

character of contract involved was unassignable in whole or in part. We have above discussed these questions and endeavored to point out the unsoundness of the chancellor's ruling.

In view of the above conclusions the decree of the lower court will be reversed, and a judgment entered here for the appellant against the appellee as to liability, and the cause will be remanded for the assessment of damages only.

Reversed. Judgment here for appellant on liability, and remanded for assessment of damages.

*Reversed and remanded.*

SMITH, C. J., concurs in the judgment rendered.