ATCHISON, T. & S. F. RY. Co. v. BRADLEY.*

(Division A. Nov. 3, 1924.)

[101 So. 577. No. 24383.]

1. ASSIGNMENTS. *Chose in action generally assignable.*
   Generally a chose in action is assignable.
2. ASSIGNMENTS. *Transactions held not to constitute assignment of parts of contract to others with whom seller contracted for goods.*
   Where seller of cross-ties contracted with third persons for cross-ties one of whom contracted with a fourth person for ties, there was no contractual relation between fourth person and buyer, though his contract provided for inspection by buyer, and it did inspect when requested by seller, the transactions not constituting assignments of parts of seller's contract.

---

*Headnotes 1.  Assignments, 5 C. J., section 50;  2.  Assignments, 5 C. J., section 62.

Appeal from chancery court of Forrest county.

Hon. T. P. Dale, Chancellor.

Bill by R. C. Bradley against the Atchison, Topeka & Santa Fé Railway Company. Decree for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Bozeman & Cameron,* for appellant.

There being no dispute about the facts in the case, only a question of law is presented. This question of law should have been decided by the court below in favor of the defendant railway company and, in failing to so decide it, the court committed error, for which this case should be reversed and a judgment entered here in favor of the appellant railway company. We predicate this assertion on the following propositions: 1. There was no contractual relation between Bradley and the railway company. 2. No duty existed towards Bradley by the railroad company, independent of contract. 3. There is no evidence that any inspection was ever demanded of the railway company. 4. Dismissal as to co-defendants releases defendant railway company.

The error of the court below is so manifest that argument is unnecessary. The first two propositions above dispose of the case. Certainly there was no obligation on the part of the railway company to inspect or take Mr. Bradley's ties, independent of any contract so to do.

It is equally certain that there was no contractual obligation resting on the defendant railway company. The railway company bought the ties from the standard company. The standard company in turn bought them from Bilbo. Bilbo in turn bought some of his from Bradley. Bradley had no contract with the railway company and no contractual obligation, therefore, rested on the railroad company to do anything. This is more than evident.

*Tally & Mayson,* for appellee.

The appellant insists that the case should be reversed for four different reasons. It is insisted first that there is or was no contractual relation between Bradley and the railway company. Since when, may we inquire, has the law of assignments been abrogated in this state? The appellant contracted with Standard Tie & Lumber Company; Standard Tie & Lumber Company assigned a portion of the contract to Bilbo, and Bilbo in turn assigned a portion of his contract to the appellee.

Any chose in action is assignable under the laws of this state. Chapter 134, Acts of 1916, Hemingway's Code, sec. 497. A written assignment of an interest in a note is enforcible in equity. *Hutchinson* v. *Simon,* 57 Miss. 628. Assignment of a part of a chose in action for a valuable consideration is good in equity. *Harris County* v. *Campbell,* 2 Am. St. Rep. and notes. The principle above referred to applies to ordinary business contracts for the delivery of particular articles not requiring or importing any special reliance on the skill or business qualifications of the party to make delivery. 5 C. J. 877, 885.

A contract to furnish wood to a railway company for use is assignable and after using wood furnished under the assigned contract if the company refuses to receive the remainder, it is liable in damages for the value of the wood. *Atlantic & North Carolina R. R. Co.* v. *Atlantic & North Carolina Company,* 147 N. C. 368, 61 S. E. 185 125 Am. St. Rep. 550.

Appellant's contention is foreclosed absolutely by the case of *Ross* v. *Merrimac Veneer Company,* 129 Miss. 693, 92 So. 823. Second, it is insisted that no duty existed toward Bradley by the railroad company independent of contract. We have shown that Bradley was an assignee of the contract or a part of the contract. We have also shown that the railroad company knew it, that

it made two shipments of his ties and inspected and re-
jected the ties in suit on the inspectors' last visit to the
place.  Bilbo was to notify Standard Tie & Lumber Com-
pany, so Mr. Christian testified.  Bilbo stipulated in this
contract that Bradley should notify him when the ties
were ready, this Bradley did from time to time.

Third, it is contended that there is no evidence that
any inspection was ever demanded of the railway com-
pany.  We have already shown in answer to this conten-
tion that the railway company provided in its contract
with Standard Tie & Lumber Company that its inspector
must inspect all the ties.  Standard Tie & Lumber Com-
pany provided in its contract with Bilbo that the ties
must be inspected by the railway's inspector.  Bilbo pro-
vided in his contract with Bradley that the ties must be
inspected by the railway company's inspector before be-
ing shipped away and paid for, and as a matter of fact,
the railway company's inspector was there twice, in-
spected and shipped away part of the ties but for some
unexplained reason didn't ship away the ties in contro-
versy.

Fourth, it is insisted that dismissal as to co-defendant
releases defendant railway company.  Of course, there
is no merit in that contention.  Bilbo could not collect any-
thing of Standard Tie & Lumber Company nor could
Standard Tie & Lumber Company collect anything of the
appellant until the ties were inspected by its inspector
and loaded on the cars and shipped out to Indiana.  The
appellee made them all parties and if the appellant
wanted any relief against Bilbo or Standard Tie & Lum-
ber Company it had the option to file a cross-bill against
them but it didn't do so.  Appellant would be entitled to
recover on another theory; the tortious conduct of the
appellant would entitle the appellee to recover if there
were no written contract relations existing.  *Waters* v.
*M. & O. Rwy. Co.,* 74 Miss. 534, 21 So. 240.

*Bozeman & Cameron,* for appellant, in reply.

There is no element of assignment in the case before the court. The railway company made a straight out contract with the Standard Tie & Lumber Company to purchase a large order of ties at a certain price. The Standard Tie & Lumber Company made a straight out contract with W. A. Bilbo to buy less than one-tenth of that whole amount from him. No mention was made in this contract of the contract between the Standard Company and the railway company. The prices and terms were entirely different. Bilbo made a straight out contract with Bradley for the purchase of a part of his quota of ties at certain prices and under certain condition. No mention was made in that contract of any contract with the Standard Tie & Lumber Company; or of the contract between the Standard Tie & Lumber Company and the railway company.

There was no assignment of the railway company's contract at all. There was a separate independent contract between the Standard Company and Bilbo, and another separate independent contract between Bilbo and Bradley. The essence of a contract of any sort, whether of assignment, or otherwise, is the assent of the parties thereto. If the contract between Standard and Bilbo and that between Bilbo and Bradley had been assignments, the A., T. & S. F. Railway Company certainly never assented to any such assignment. Admittedly they did not know Bradley and Bradley did not know them.

Neither the railway company nor the Standard Company ever assented to any assignment, or knew of any purported assignment or dealt with Bradley in any way. The case of *Ross* v. *Morrimac Veneer Company,* 129 Miss. 693, 92 So. 823, is entirely different. There the Morrimac Company bought a certain number of logs from the Maley Lumber Company. The Maley Company in turn assigned a part of the original contract to Ross.

Not only was the fact of the existence of a contract between Morrimac and Maley mentioned, but its terms were set out in the contract between Maley and Ross. Further, in the Morrimac case, this company dealt direct with the assignee, Ross. It is idle to discuss the authorities cited by our opponents, or to pursue the argument further.

ANDERSON, J., delivered the opinion of the court.

Appellee, R. C. Bradley filed his bill in the chancery court of Forrest county, against appellant, Atchison, Topeka & Santa Fé Railway Company, to recover the sum of two hundred eighty-one dollars and twenty-six cents alleged to be due him by the appellant, growing out of a breach of contract between the parties, by appellant. The proceeding is an attachment in chancery on the ground of the nonresidence of appellant. The case was tried on bill, answer and proofs and a decree was rendered in favor of appellee for the amount sued for with interest and costs, from which decree appellant appeals to this court.

There is no dispute whatever as to the facts of the case. Therefore there was no issue of fact for the chancellor to try. There were only issues of law. The controlling facts of the case are as follows:

Appellant was one of the extensive railroad systems of this country. Its construction and upkeep work necessitated the purchase by it of large quantities of railroad cross-ties. The Standard Tie & Lumber Company of Meridian in this state was engaged in the cross-tie business. It bought ties from various persons, firms, and corporations engaged in the cross-tie business in South Mississippi and elsewhere. The ties were sold in turn to different railroad companies in this country. In January, 1921, appellant purchased from the Standard Tie & Lumber Company, fifty thousand railroad cross-ties at prices named f. o. b. cars at producing points, the contract

providing for inspection by appellant's inspector at such loading points. This contract was carried out according to its terms. The Standard Tie & Lumber Company delivered to the appellant who accepted same, the fifty thousand ties contracted for.

Appellee Bradley came into the transaction in this manner: The Standard Tie & Lumber Company, in order to fill its contract with appellant, went among various persons and concerns in South Mississippi, and perhaps elsewhere, engaged in the railroad cross-tie business, and in turn purchased from them (one of whom was W. A. Bilbo) a sufficient number of ties for said purpose. These contracts provided for the delivery of the ties purchased within the time fixed for the delivery of the fifty thousand ties purchased by appellant from the Standard Tie & Lumber Company. The contract between the Standard Tie & Lumber Company and W. A. Bilbo was in writing. By its terms, three thousand five hundred of the ties were purchased by the Standard Tie & Lumber Company from W. A. Bilbo, the contract providing for inspection and acceptance by the appellant before loading. W. A. Bilbo in turn, in order to carry out his contract with the Standard Tie & Lumber Company, purchased from appellee, R. C. Bradley, two thousand of the ties which he (Bilbo) had agreed to sell and deliver to the Standard Tie & Lumber Company. The contract between Bilbo and appellee was in writing, and among other things provided that appellant's inspection and acceptance should govern. Appellee got out and delivered, according to his contract with Bilbo, a part of the ties which he had sold Bilbo. When his ties were ready for shipment he notified Bilbo and knew no one else in the transaction. Bilbo in turn notified the Standard Tie & Lumber Company that the ties were ready for shipment, and in turn the Standard Tie & Lumber Company notified appellant, who sent its inspector to inspect and accept or reject the ties.

Appellee got out and had ready for shipment a lot of ties which appellant's inspector rejected but which appellee proved came up to the requirements of his contract with Bilbo (the contract being in writing) at the time the former requested of the latter that the inspection be made, but on account of an unreasonable delay of inspection the ties deteriorated in value in the amount sued for.

The evidence shows without any conflict whatever, that appellee Bradley knew no one in the making or carrying out of his contract with Bilbo, except the latter; that he was under obligation to no one in reference to the matter, except Bilbo, and looked upon no one as obligated to him except Bilbo. And the same was true of the parties thereto with reference to the making and the execution of the contract for the three thousand five hundred ties between Bilbo and the Standard Tie & Lumber Company. And it was likewise true of the parties in the making and execution of the contract for the purchase and sale of the fifty thousand ties between the Standard Tie & Lumber Company and the appellant. In other words, no one from appellee up to the Standard Tie & Lumber Company, had any agreement whatever with reference to filling the tie contract between the Standard Tie & Lumber Company and appellant, except the latter two parties. It is true that all ties by whomsoever furnished to fill said contract, had to be inspected by appellant's inspector. It is, nevertheless, plainly shown by the contracts involved, as well as by the evidence, that appellant had no contractual relations whatever touching these ties except with the Standard Tie & Lumber Company. Appellant's position is that, in view of the fact that it had no contractual relations with appellee, it therefore neither owed the other any duty or obligation contractual or otherwise. Hence, there could be no breach of duty or obligation on the part of appellant and liability following the same. On the other hand, appellee contends that, looking at the whole transaction, what took place amounted simply to an as-

signment to W. A. Bilbo by the Standard Tie & Lumber Company of a part of its contract with appellant, and in turn as assignment by W. A. Bilbo to appellee of a part of the former's contract with the Standard Tie & Lumber Company. And that thereby appellant was under the same obligation to these assignees of parts of the original contract as it was to the Standard Tie & Lumber Company. And appellee cites authorities to show that a chose in action is assignable, which, of course, is generally true. But appellee especially relies on *Ross* v. *Morrimac Veneer Co.,* 129 Miss. 693, 92 So. 823, as conclusive in favor of his right to recover.

We do not understand that case as sustaining appellee's contention. That case involved a contract to furnish one million five hundred thousand logs at a specified price, within a given time. The court held that such a contract was not personal or so peculiarly individual as to be unassignable; that the assignment of a part interest in such a contract was effectual where agreed to and accepted by the purchaser of the logs by means of telephone communications and letters, as well as the actual acceptance of and payment for numerous cars of such logs delivered to the purchaser by the assignee.

There is no pretense of a formal assignment in the present case from the Standard Tie & Lumber Company to Bilbo or from the latter to appellee. Appellee's position is that the contract as understood and performed was tantamount to such assignments. We are of the opinion that the evidence does not tend even to make such a case. The nearest approach to it (and that is wholly insufficient as tending to establish the existence of such assignments) is that appellant's inspector inspected and accepted or rejected, all ties ready for shipment by whomsoever gotten out, when requested so to do by the Standard Tie & Lumber Company.

We simply hold that this is a case where the evidence shows without dispute that appellant was under no obli-

gation to appellee by contract or otherwise, and therefore could be guilty of no breach of duty.

*Reversed, and judgment here for appellant.*