STEPHEN R. WARD, INC., A Mississippi Corporation; and Stephen R. Ward and wife, Annie Lou Ward, Individually, Plaintiffs,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.

Civ. A. No. H87–0039(R).

United States District Court, S.D. Mississippi, Hattiesburg Division.

March 11, 1988.

John Deakle, Hattiesburg, Miss., for plaintiffs.

Robert J. Dambrino, III, R.W. Heidelberg, Heidelberg, Sutherland & McKenzie, Hattiesburg, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This matter is before this Court on Motion for Summary Judgment filed by the Defendant United States Fidelity and Guaranty Company and on Motion to Amend the Complaint filed by the Plaintiffs Stephen R. Ward, Inc., and Stephen R. and Annie Lou Ward, Individually, and this Court having examined said motions and briefs and exhibits submitted in support and response thereto, finds that for the reasons more fully set forth herein, the defendant's Motion for Summary Judgment is not well

taken and should be denied and the plaintiffs' Motion to Amend the Complaint is well taken and should be granted.

## FACTS

On February 17, 1979, Stephen R. and Annie Lou Ward purchased certain real property located at 1024 North Main Street in Hattiesburg, Mississippi. On October 29, 1979, they purchased from the defendant United States Fidelity and Guaranty Company, by and through its local agent, Ross–King–Walker, Inc., a policy of insurance which provided for fire and extended care coverage on the subject property. The policy at issue, # FP6015137, was purchased for a term of three years commencing on October 29, 1979, and expiring on October 29, 1982. The initial coverage was for $40,000.00.

Thereafter, on February 8, 1980, Stephen R. and Annie Lou Ward conveyed the subject property to Stephen R. Ward, Inc., a Mississippi Corporation. On or about February 21, 1980, the policy's named insured was changed to reflect this change of ownership. On April 23, 1980, the subject policy was amended at the plaintiffs' request to increase the fire and extended care coverage from $40,000.00 to $50,000.00, however, the expiration date of the policy as amended remained October 29, 1982. On December 14, 1983, the subject property was damaged by fire. Because of the defendant's refusal to compensate the plaintiffs for the loss sustained as a result of the fire, the plaintiffs filed this suit alleging *inter alia* bad faith breach of contract.

It is the defendant's position that pursuant to its terms, the subject policy expired on October 29, 1982, and that the policy was not renewed by Stephen R. Ward, Inc., or any other person or entity. The defendant further alleges that no premium had been paid, deposited or tendered to it, its agents or employees by the plaintiffs for any insurance coverage for anytime subsequent to October 29, 1982. The defendant also contends that because the policy expired by its own terms, no statutory or contractual requirement compelled it to give notice of such to the named insured, Stephen R. Ward, Inc.[1]

In response to the facts and allegations as outlined above, the plaintiffs assert that dating back to November, 1975, Stephen R. and Annie Lou Ward developed a course of dealing with the defendant by and through its local agent, Ross–King–Walker, Inc. The plaintiffs assert that as a result of the course of dealing they carried an open account with Ross–King–Walker, Inc., and that periodically they would be billed a single sum for an amount owed on several policies. The plaintiffs contend that they would then make periodic partial payments on the total amount owed and that Ross–King–Walker, Inc. would carry the balance of the amount owed and charge a fee for doing so.

With respect to the subject policy, the plaintiffs contend that they contacted Ross–King–Walker, Inc. through its employee, Mr. Bill Van Huss, about renewing the subject policy. The plaintiffs assert that as a result of that conversation, on September 11, 1982 a renewal declaration for the subject policy was generated. The renewal declaration was to be effective from October 29, 1982 to October 29, 1985, and the coverage was to have been increased from $50,000.00 to $61,000.00. It is the defendant's position that at the request of the plaintiff, Stephen R. Ward, the renewal declaration was not put into effect. Mr. Ward asserts that at no time did he request cancellation or non-renewal of the subject policy. It is the plaintiffs' position that they have never received any notice of cancellation, lapse or non-renewal or any request for premium payment. Furthermore, the plaintiffs contend that the mortgagee on the subject property, Pine Belt Savings and Loan Association, now Charter Bank (Pine Belt), has also never received any notice of cancellation, lapse or non-renewal from the defendant or any of its

1. It has been contended that Stephen R. and Annie Lou Ward, individually, have no standing to sue in this cause. As it is pointed out herein, that is not the position of the Court.

agents.[2]

## NOTICE—CANCELLATION AND NON-RENEWAL

■ The bottom line concerning the defendant's Motion for Summary Judgment is whether or not this Court, as a matter of law, can conclude that the subject policy was not cancelled by the defendant but rather expired by its own terms, or was cancelled or not renewed at the request of the plaintiff, Stephen R. Ward. Clearly, summary judgment may only be granted if the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *Dugas v. Travelers Insurance Co.*, 785 F.2d 550 (5th Cir. 1986). "If reasonable minds might differ on the resolution of any material fact or even on the inferences arising from undisputed facts, summary judgment must be denied." *Anthony v. Petroleum Helicopters, Inc.*, 693 F.2d 495, 496 (5th Cir.1982); *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986).

> As recently stated by the Fifth Circuit: An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the

evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987).

In *Anderson* the Supreme Court noted that the genuine issue summary judgment standard is very close to the reasonably jury directed verdict standard.

> The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted.' *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.

*Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

With regard to the named insured, this Court is somewhat confident that as the defendant points out there is no applicable statutory or contractual requirement that notice must be given where the policy at issue expires by its own terms or is cancelled or not renewed at the request of the insured.[3] However, it should also be noted that if the policy was renewed and thereafter cancelled, not at the request of the plaintiff, Stephen R. Ward, then at least

---

**2.** The plaintiffs have obtained a complete assignment of rights from Pine Belt with respect to all claims and/or causes of action it might have against the defendant as a result of the fire loss. The defendant alleges that the assignment is invalid and should not be permitted. As is discussed more fully herein, this Court does not hold the defendant's view.

**3.** The only Mississippi statutes colorably applicable to the case *sub judice* are Miss.Code Ann. §§ 83–11–5, 83–11–7 and 83–13–9 (1972). How-

ever, §§ 83–11–5 and 83–11–7 concern themselves with automobile insurance policies and even in giving them application to this case, there is no language which would require notice to the named insured if, as the defendant alleges, the policy expired by its own terms or was cancelled or not renewed at the request of the insured. Moreover, with respect to § 83–13–9, it must be pointed out that the protections afforded are *not* for the benefit of the named insured but rather for the mortgagee.

contractually the defendant would be required to give the named insured notice of such.[4]

In support of its position that it had no obligation to notify the named insured of the impending expiration, the defendant cites *Cole v. Motors Insurance Corporation*, 243 So.2d 556 (Miss.1971) and *Romeo v. Reliance Insurance Company*, 53 A.D. 2d 733, 384 N.Y.S.2d 39 (1976). In both cases the failure to pay the renewal premium on the date due caused the policy to expire and both courts determined that no notice of the expiration was required. In further support of its argument, the defendant suggests that a letter received by Mr. Bill Van Huss at Ross-King-Walker, Inc. from Stephen Ward indicating his desire not to renew several policies with the defendant and other insurance companies evidenced the beginning of an attempt by Mr. Ward to *completely change carriers for his insurance needs*.[5] The defendant asserts that after receiving the letter, a representative of Ross-King-Walker, Inc. called Mr. Ward to inquire as to what the problem might be and that during the telephone conversation, Mr. Ward gave instructions not to renew any of his business. Such allegations standing alone, together with the case law cited by the defendant, might support a conclusion that the policy expired by its own terms or was cancelled or not renewed at the request of the plaintiff; and that no notice to the named insured was required. However, the plaintiffs have come forward with sufficient evidence to preclude such a conclusion at this stage of the litigation.

The plaintiffs indicate that at no time did Stephen Ward ever request that the policy at issue be cancelled or not renewed. This position is confirmed by affidavit. Furthermore, the plaintiffs assert that the existence of the renewal declaration generated on September 11, 1982 establishes their intention to renew the subject policy. The defendant contests the validity of the renewal declaration because it was never countersigned by a company representative; and therefore, as a matter of law, was never placed in force and effect. 43 Am.Jur.2d *Insurance* § 208 (1982). However, it should be noted that a countersignature may be waived and dispensed with where the intention to execute the contract and cover the risk is sufficiently plain. *Id.* at § 208 and n. 9.[6]

Furthermore, the plaintiffs admit that no premium payment had been made from October 29, 1982 until the loss; however, they assert that by and through the established course of performance with the defendant through its agent, Ross–King–Walker, Inc., they paid periodic partial payments on the total amount owed for several policies, including the subject policy, and that the reason no payment had been made was because no billing notice had been received. The defendant contends that this failure to pay also convincingly establishes that the subject policy was not in force and effect at the time of the loss, and that the policy expired by its own terms for non-payment of the premium. The defendant does not

4. The following is the subject policy's requirement for notice of cancellation to the named insured:
   CANCELLATION OF POLICY. This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. The policy may be cancelled at any time by this Company by giving to the insured *a five days' written notice of cancellation* with or without tender of the excess of paid premium above the pro rate premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

5. Conspicuously absent from Mr. Ward's letter of July 13, 1982, is any mention of the subject policy.

6. The plaintiffs have requested that this Court allow them to amend their complaint to reflect a change in the alleged actual damages from $50,000.00 to $61,000.00 as exhibited by the increased coverage on the renewal declaration page at issue. Because the renewal declaration page will undoubtedly play a large role in each party's case in chief, and because this Court is not prepared to say that the renewal declaration is invalid as a matter of law, the plaintiffs will be allowed to amend their complaint to reflect the change in the amount of coverage.

deny that some type of billing practice evolved between the plaintiffs and Ross–King–Walker, Inc., and it is very difficult at this point to determine whether or not the plaintiffs had a right to rely on such.

In *Willis v. Mississippi Farm Bureau Mut. Ins. Co.,* 481 So.2d 256 (Miss.1985), the Mississippi Supreme Court examined, among other things, custom and usage and the relationship between the insured and his agent. In adopting the rationale as applied by several Alabama cases, the Mississippi Supreme Court accepted in principle that:

> '. . . if an insurance company, by its habit of business, creates in the mind of a policyholder the belief that payment may be delayed until demanded, or otherwise waives the right to demand a forfeiture, this is binding on the company notwithstanding there may not have been a compliance with the express letter of the policy. *Home Protection of North Alabama v. Avery,* 85 Ala. 348, 5 So. 143. Such is the general rule. 45 *C.J.S. Insurance* § 712; 29 Am.Jur., Insurance, § 860; *3 Couch On Insurance,* § 681. But that principle has no application unless the custom or usage was one of which the insured had knowledge and upon which he relied. *Bosworth v. Western Mut. Aid Soc.,* 75 Iowa 582, 39 N.W. 903; *3 Couch On Insurance,* § 681a. *Childress v. Foremost Ins. Co., Inc.,* 411 So.2d 124, 126 (Ala.1982); *Inter–Ocean Insurance Company v. Banks,* 268 Ala. 25, 28, 104 So.2d 836 (1958). In *Childress* the court held, that if the custom was with regard to this plaintiff *or* if the plaintiff had knowledge of and relied upon it, a directed verdict would not lie. 411 So.2d at 126.'

*Willis,* 481 So.2d at 260.

Although the defendant has pointed out that *Willis* is an automobile insurance case, this Court does not think that it can be seriously disputed that the above quoted language should and must apply equally to all types of insurance relationships. Because the parties had knowledge of the "custom", the issue of whether or not the plaintiffs had a right to delay payment for such a length of time[7], as well as the issue of notice, coverage, and cancellation or expiration cannot presently be decided as a matter of law in the defendant's favor.

## STANDING OF THE INDIVIDUAL PLAINTIFFS

■ The defendant has also asserted that the individual plaintiffs Stephen R. Ward and Annie Lou Ward have no standing to sue as a result of the alleged breach of contract. In support of this position, the defendant refers this Court to *Bruno v. Southeastern Services, Inc.,* 385 So.2d 620, 622 (Miss.1980), wherein it was held that:

> We adopt the rule in Mississippi that an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation.

The defendant argues that "[i]n accordance with the general rule, a suit on an insurance contract ordinarily must be brought only by the parties to the contract (Stephen R. Ward, Inc.) and third persons in privity with them." 46 C.J.S. *Insurance* § 1266 (1946).

Although *Bruno* does restrict the rights of shareholders to sue, such is the case only where the shareholder is attempting to bring suit in his or her individual capacity to redress a wrong done solely to the corporation. *Bruno,* 385 So.2d at 621. Stephen R. Ward and Annie Lou Ward,

---

7. *See also, Henderson v. United States Fidelity and Guaranty Company,* 620 F.2d 530, 536 (5th Cir.) *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). As in *Willis,* when the Fifth Circuit determined that "[t]he jury could have found that Sigler had a billing and credit arrangement with Henderson which made nonpayment irrelevant," it is clear that such a conclusion should not be restricted solely to automobile insurance situations.

individually, have alleged liability to the corporation (albeit, in effect, to themselves) under their explicit contractual duty to sell to the corporation not only the subject property, but also to assign their insurance coverage with the defendant. Moreover, Stephen R. Ward alleges individual damages because he has at all times been, and is now, personally liable for the indebtedness to the mortgagee Pine Belt for which the policy was purchased, and which indebtedness has not been paid allegedly as a result of the refusal of the defendant to honor the mortgagee clause in the subject policy.

It cannot be said that the plaintiffs' cause of action belongs solely to the corporate entity and therefore, the defendant's request to dismiss the individual plaintiffs should be denied.

## ASSIGNMENT OF RIGHTS AND PUNITIVE DAMAGES

As has been noted earlier, the mortgagee of the subject property at the time of the loss was Pine Belt. Under the terms of the policy and by statute, the mortgagee, like the named insured, is in certain circumstances entitled to some type of notice [8]; and the arguments presented by the parties with respect to the named insured concerning cancellation, non-renewal and expiration are arguably equally applicable with respect to the mortgagee. The defendant objects to any assertion of the mortgagee's rights by the plaintiffs, arguing that any allegation that the mortgagee did not receive proper notice must be stricken because the mortgagee, not a party to this lawsuit, is the only person or entity which is able to assert such a claim. In response, the plaintiffs have obtained an assignment

---

**8.** Concerning notice to the mortgagee, the policy at issue states that:

> MORTGAGEE INTERESTS AND OBLIGATIONS. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

The Mississippi statutory requirement for notice to the mortgagee directs that:

> § 83–13–9. Mortgage clause.
>
> Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgage clause, viz:
>
> Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as _____ mortgagee (or trustee), as _____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; *and in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.* The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void. *This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement.* In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principle due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of _____ claim. Nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of section 83–13–5. (emphasis added)

from Pine Belt[9] and now request this Court to grant permission for them to amend their complaint to properly assert the assigned rights. The defendant objects to this request arguing that the assignment is champertous, against public policy and that the assignor is the real party in interest and as such must be joined in this litigation. As shall be more fully developed herein, the defendant's contentions are not persuasive and the plaintiffs shall be allowed to amend their complaint to assert the rights assigned from Pine Belt.

■ The validity of assignments of choses in action is codified at Miss.Code Ann., § 11–7–3 (1972), which states that:

The assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing. In case of a transfer or an assignment of any interest in such chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the original party, or the court may allow the person to whom the transfer or assignment of such interest has been made, upon his application therefor, to be substituted as a party plaintiff in said action. If in any case a transfer or assignment of interest in any demand or chose in action be made in writing before or after suit is filed, to any attorney or firm of attorneys, appearing in the case, it shall be sufficient notice to all parties of such assignment or transfer, if such assignment or transfer be filed with the papers in said cause, and such attorney or attorneys shall not be required to be made parties to said suit.

The validity of assignments has been acknowledged in several Mississippi cases. *See generally J.H. Leavenworth & Son v. Hunter*, 150 Miss. 245, 267, 116 So. 593, 596 (1928); *Atchison, Topeka & Santa Fe Railway Co. v. Bradley*, 136 Miss. 467, 101 So. 577 (1924) and more recently *Grisham v. Hinton*, 490 So.2d 1201, 1204 (Miss. 1986). Furthermore, in *Liberty Savings & Loan Association v. Mitchell*, 398 So.2d 208 (Miss.1981), it was determined that:

Mississippi Code Annotated, Section 11–7–3 (1972) authorizes an assignee of choses in action to sue for and recover on the same in his own name, if the assignment is in writing, and, in the event suit has commenced prior to the assignment, as here, the assignee may continue suit in the name of the original party. This court has held that assignments may include actions for recovery of personal property, enforcement of contract rights, recovery for breach of contract, and for injuries to person or property. (citations omitted)

*Mitchell*, 398 So.2d at 211.

For the actions of the plaintiffs to be considered champertous, there must be some evidence that the assignor's right of action was purchased by the plaintiffs and that the plaintiffs have no other interest in the litigation but for the assignment.[10] As-

---

**9.** The assignment from Pine Belt to the plaintiffs transferred all of its interest in any claims and/or causes of action against the defendant arising out of the subject loss.

**10.** Miss.Code Ann. § 97–9–11 (Supp.1987) is Mississippi's champerty statute and it directs in part that:

It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated, either before or after proceedings commenced: (a) to promise, give, or offer, or to conspire or agree to promise, give, or offer, (b) to receive or accept, or to agree or to conspire to receive or accept, (c) to solicit, request, or donate, any money, bank note, bank check, chose-in-action, ..., or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to com-

mence or prosecute further, any proceeding in any court or before any administrative board or other agency, regardless of jurisdiction; ....

Champerty as defined in BLACK'S LAW DICTIONARY 209 (5th ed. 1979) requires:

[a] bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered. *Schnabel v. Taft Broadcasting Co., Inc.*, Mo.App., 525 S.W.2d 819, 823. 'Maintenance' consists in maintaining, supporting, or promoting the litigation of another.

Furthermore, it has also been determined that:

Maintenance or champerty does not avoid a contract concerning litigation where the contracting parties both have an interest in the subject of the litigation or in the litigation

suming that the theory of champerty and maintenance can be applied in situations other than where lawsuits are purchased outright, it is this Court's opinion that such an application should not be made in this case. It is obvious that the plaintiffs are *not* strangers to this litigation and that they have asserted an interest in this action separate and distinct from the interests of Pine Belt.

■ The defendant also objects to the assignment because it considers that Pine Belt is a real party in interest in this action and therefore should be joined accordingly. The defendant suggests that the assignment, if anything, only conveyed a partial interest because the plaintiffs remain indebted to the assignor for the face amount due and owing under the subject policy. In other words, because Pine Belt retained the right to be paid an amount equal to that yet to be recovered on the subject policy, the defendant considers the assignor to be a real party in interest.[11] The defendant's contention is misplaced because the analysis should not be focused on the relationship between the assignee and the assignor but rather on the relationships between the assignor and the defendant and the assignees and the defendant. As noted earlier, Pine Belt has conveyed to the plaintiffs all of its interest in any claims or causes of action against the defendant arising out of the subject loss. As it now stands, Pine Belt no longer maintains any ability to sue the defendant for the alleged tortious acts in question; and therefore, not only is Pine Belt not a real party in interest in this litigation, but, in fact, it has no interest in the litigation.

■ Lastly, the defendant objects to the assignment inasmuch as it assigns to the plaintiffs the right to prosecute all of the assignor's interests. The defendant anticipates that one of these "interests" will be punitive damages. In support of its position that punitive damages are not assignable, the defendant relies on *National Surety Corporation v. State,* 189 Miss. 540, 198 So. 299 (1940) and *J.H. Leavenworth & Son, Inc. v. Hunter,* 150 Miss. 245, 116 So. 593 (1928). In each case it was determined that the right to recover penal damages which were provided by statute is intended as a punishment for misconduct in the nature of police regulations, and therefore is not assignable. Punitive damages, although designed in part to punish and deter, are not penal damages; the two are separate and distinct and are designed to remedy different wrongs. This Court has not been able to locate any Mississippi case which has held that punitive damages in a breach of contract-bad faith action are not assignable and is not prepared to do so today.[12]

■ With regard to the overall issue of punitive damages in this case, it must be acknowledged that Mississippi law directs that "punitive damages are not recoverable for the breach of contract unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence as to consist of an independent tort." *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 298 (Miss.1975); *see Employers Mut. Casualty Co. v. Tompkins,* 490 So.2d 897, 906 (Miss.1986); *Standard Life Ins. Co. v. Veal,* 354 So.2d 239, 247 (Miss.1977). *See also Henderson v. United States Fidelity & Guar. Co.,* 620 F.2d 530, 536 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). However, application of the above requires a determination of whether or not the insurance company had a justifiable reason or arguable

---

itself; the gist of maintenance being an officious inter-meddling in the suit of another, one who has an interest in the subject of litigation may properly purchase an additional interest free from a valid charge of maintenance.
14 Am.Jur.2d *Champerty and Maintenance* § 9 (1964)

**11.** It should be noted that in the assignment the plaintiffs also acknowledged that they would remain fully liable to the assignor for the amount still owed on the Deed of Trust.

**12.** In *Oppel v. Empire Mut. Ins.,* 517 F.Supp. 1305, 1307 (S.D.N.Y.1981), the issue of the assignability of punitive damages was briefly discussed and it was determined that "... New York courts permit punitive damages in a bad faith case, though the showing must be extraordinary. Thus, there is no reason why this cause of action also cannot be assigned."

basis for *denying* a valid claim. *See, e.g., Vogel v. American Warranty Home Serv. Corp.,* 695 F.2d 877, 883 (5th Cir.1983). In interpreting what a legitimate or arguable reason is, the Mississippi Supreme Court has stated:

> We are of the opinion that the term 'legitimate or arguable reason,' although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985).

At this time, this Court is unable to conclude that as a matter of law punitive damages are not recoverable.

For the reasons more fully set forth herein, this Court is of the opinion that the Defendant United States Fidelity and Guaranty Company's Motion for Summary Judgment is not well taken and should be denied and the Plaintiffs' Stephen R. Ward, Inc. and Stephen R. and Annie Lou Ward, Individually, Motion to Amend the Complaint to reflect a change in alleged actual damages and to properly assert the rights assigned by Pine Belt is well taken and should be granted.