FRY *v.* LAYTON.

(In Banc. May 26, 1941. Suggestion of Error Overruled June 14, 1941.)

[2 So. (2d) 561. No. 34567.]

**Shannon, Beard & Pack,** of Laurel, for appellant.

Quitman Ross, of Laurel, for appellee.

Argued orally by **Sam Pack**, for appellant, and by **Quitman Ross**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellant was in the small loan business in the City of Laurel. Appellee, for one dollar paid to each, purchased from eighteen borrowers from appellant, notes such borrowers had supposedly paid to appellant, with the rights of such borrowers growing out of these loans. Appellee, as such assignee, sued appellant in the circuit court for the principal and interest of these notes, and also of two notes he had paid appellant, all aggregating the sum of $1,877.25, on the ground appellant had collected more than twenty per cent. interest on these loans. The lower court granted a peremptory instruction to find for appellee, plaintiff below, in the sum of $1,610, two of the notes and part of another having been withdrawn by plaintiff, and a verdict and judgment were returned and entered accordingly. From this judgment, this appeal is taken.

Appellant contends, first, there was no usury; and, second, that if usury existed, appellee has no right to maintain the action except as to his own loans—that the right to recover usury is personal to the borrower. These are the two questions presented for our decision.

Considering the first question, appellant made only small loans, apparently not over one hundred dollars, and only on personal security. The applicant for the loan was required to furnish appellant, the lender, the names of parties who were willing to sign his note for the loan. Appellant would make such investigation of the applicant and his proposed sureties as he desired and then either make or refuse the loan. If the loan was made, the borrower and his sureties would sign a note for the amount. This note was payable $2.50 per week, and therefore the maturity date of the last payment would depend on the amount of the loan. Appellant would deduct ten per cent. of the amount of the loan, and the note also provided that the lender would deduct 3% of the loan for insurance supposedly carried to guarantee the payment of the debt, and also deduct certain fees to cover the cost of investigating the applicant and his sureties, this ranging from 50c on loans of not over $5 to $2 for loans of not over $60, and on loans of over $60, the fee was a matter of agreement. To illustrate, on a loan of $100, the note would be for $100, payable for forty weeks at $2.50 per week, bearing legal interest after maturity. The borrower would get in cash approximately $85. No loans involved here were in excess of $100.

The note also provided that in case of the death of the borrower, the unpaid installments would be cancelled and neither his estate nor his sureties would be liable therefor.

Appellant says he was not guilty of usury because he was operating under Article 2 of Chapter 37, Code of 1930, Section 1952, as amended by Chapter 265, Laws of 1932, which he claimed permitted the charges made. He tes-

tified that he had procured a license under that Article; but also testified that he had not complied with Section 1953 of that chapter, which provides that no license shall issue until the applicant has executed bond as therein required; nor with Section 1967 requiring that one charging more than twenty per cent interest shall pay an additional privilege tax of two thousand dollars; nor with Section 1956 requiring all who operate under this law to keep books, showing names of borrowers, dates of loans, etc., which books, according to Section 1958 of this chapter, shall be open to inspection at all times by the mayor, sheriff and grand jury; and since Section 1965 of said chapter provides that if licensee shall violate any of the provisions of this Article, ''the license under which said business is conducted shall become ipso facto void,'' we hold that the supposed license issued to applicant was void, and even had it been valid, would have been revoked ipso facto. Therefore, appellant cannot claim protection under said Article 2.

Appellant next contends that he had a right under the general interest laws of Mississippi to make the charges for investigating the sureties and the three per cent for insurance, also the right to deduct in advance ten per cent of the total amount, regardless of the length of time the loan should run (and none appear to have extended over forty weeks), because the notes provided that in case of death of the borrower the unpaid balance of the debt should be cancelled; that to constitute usury it is essential that the principal sum shall be repayable at all events; and that if it is payable only on some contingency then the transaction is not usurious.

The charges here were greatly in excess of twenty per cent, omitting the investigation charge, so we need not consider those charges.

The rule for which appellant contends is correct, but appellant is not within it. In the first place, the charge of three per cent was to enable appellant to take out insurance (which he did not do) to guarantee repayment to

him of the debt, and in the next place the loan must not be made subject to the improbable contingency merely to escape the statute against usury. In Missouri, etc., Trust Company v. Krumseig, 172 U. S. 351, 19 S. Ct. 179, 43 L. Ed. 474, this principle was applied to a contract reserving more than the legal rate of interest, even though it was stipulated that in event of the borrower's death during the term of the contract, all of the debt then unpaid should be released if he were not then in default. In this connection, it will be kept in mind that these were short term loans. In the case of Hardin v. Grenada Bank, 182 Miss. 689, 180 So. 805, 809, this Court said "The law (usury statute) will not tolerate any devices to defeat its provisions when the consummation of usury is really intended."

We think the lower court was correct in holding that these transactions were usurious.

Appellee contends that, as assignee, he had the right to sue for and recover the principal and interest of these loans.

Appellant contends that the purpose of the usury acts is to protect the necessitous borrower, and the right of recovery is personal to him and is confined to him, those who are parties to the contract, their privies in blood or estate, or those who would be affected by the usurious transaction, and the right of recovery is not available to a stranger to the transaction.

The decisions are not harmonious on this proposition. They are affected by statutes, the bases of the right of action of the original borrower, and public policy of the different states. Appellee cites five cases to support his position. We will consider them.

Fidelity Trust & Safety Vault Company v. Ryan et al., 109 Ky. 240, 58 S. W. 610, 22 Ky. Law Rep. 734, involved the correct amount owing on a debt secured by a mortgage executed on lands belonging both to the husband and Mrs. Ryan, who filed the suit, claiming the debt was

usurious and that nothing was owing. The mortgagee had obtained a judgment against Mr. Ryan, who assigned his rights against the mortgagee to his wife. Mrs. Ryan was also made a party to the action. While it is stated that the assignee might maintain an action to recover usury, the case is distinguished on the facts in the above respects from the case at bar.

In Harper v. Middle States Loan, Bldg. & Const. Co., 55 W. Va. 149, 46 S. E. 817, 2 Ann. Cas. 42, Mrs. Lawrence owned the property and executed a mortgage thereon. She conveyed the property to Mrs. Harper, who assumed the debt, who, with her husband, conveyed to Riley Harper. Riley Harper enjoined the foreclosure by the mortgagee, contending the debt had been overpaid by usury. Mrs. Lawrence and Mrs. Harper were parties to the action. It is seen that the facts are different from the case at bar. However,. in Hatfield et al. v. Sayre et al., 111 W. Va. 514, 163 S. E. 34, 35, 82 A. L. R. 1148, a West Virginia case decided some twenty-eight years after the Harper case, the court used these expressions: "Ordinarily, the defense of usury is personal to the debtor and those in legal privity with him. Lee v. Feamster, 21 W. Va. 108, 45 Am. Rep. 549; Harper v. [Middle States Loan], Building [& Const.] Co., 55 W. Va. 149, 46 S. E. 817, 2 Ann. Cas. 42; Chenoweth v. [National] Building Association, 59 W. Va. 653, 53 S. E. 559; 2 Jones on Mortgages (8 Ed.), sec. 791; 39 Cyc., p. 1062. The phrase 'legal privity' as used in this connection means those upon whom title or an interest is cast by law, and not those who become interested through contract. Harper v. [Middle States Loan], Building [& Const.] Co., supra, 55 W. Va. [149], 152, 46 S. E. 817, 819, 2 Ann. Cas. 42. There is also a general rule that a grantee who assumes the discharge of a mortgage debt as a part or all of the consideration which he is to pay for the conveyance of the property to him may not raise the question of usury in the debt. Jones on Mortgages, supra; 39 Cyc., p. 1069; Stuckey v. [Middle States] Loan, [Bldg. & Const.]

Co., 61 W. Va. 74, 55 S. E. 996, 8 L. R. A. (N. S.) 814, 123 Am. St. Rep. 977.''

In Berk et al. v. Isquith Productions, Inc., et al., 98 N. J. Eq. 608, 131 A. 526, 528, defendant Staw owned the property and executed a first and second mortgage thereon, then conveyed the property to Isquith, which concern executed a mortgage back to Staw. The first mortgagee filed a bill to foreclose, joining as defendants all other parties interested in the lands, including Staw as third mortgagee. It is at once evident that the case is quite different from the case at bar. However, in that case the court used this language: ''Usurious contracts are prohibited by our statute. 4 C. S., p. 5704. That statute was enacted for the benefit of the necessitous borrower, and it is because such statutes have uniformly been enacted for his benefit that the defense of usury has been held to be a personal defense. . . . While it is quite clear that a mere stranger cannot set up usury in avoidance of a mortgage to which he is neither party nor privy, the defense may be set up by any one claiming under the mortgagor and in privity with him; and, as a general principle, it may be stated that, whenever a subsequent holder of a title to lands subject to a usurious mortgage 'stands quoad hoc in the shoes of the mortgagor,' he may set up this defense.'' And, while the court does say in one place that the right of a borrower to recover usurious interest paid and to set it up as a defense may be assigned, this statement is dictum.

In Weitz v. Quigley, 88 N. J. L. 617, 97 A. 254, the defendant, Fred Quigley, was sued upon a note that he, Fred, had executed to his father James Quigley, which had been endorsed to the plaintiff. Previous to this other notes had been handled between the parties in the same way, which had been paid by the father. In this action, Fred Quigley set up as a defense, and also as ground for affirmative recovery over against plaintiff, usury which the father had paid on the previous notes, and he was allowed to so defend and recover. This case would

be authority for us to hold that the appellee herein might recover the interest which the various debtors paid appellant if we thought the rights of the parties to this action and the public interest justified that holding, since New Jersey had a statute authorizing the assignment of choses in action and suits thereon in the name of the assignee, similar to Section 505, Code of Mississippi 1930; and the New Jersey Court had held, as this Court has held, that the basis of recovery of usurious interest is the implied promise of the creditor to repay it. The Quigley case, supra, is the strongest case for appellee which has been brought to our attention or that we have found, yet it is seen that the defendant in that case was also a party to and liable upon all of the contracts on which the usury was paid.

Bovit v. Mantel et ux., 108 N. J. Eq. 11, 153 A. 638, was an action in equity to foreclose a mortgage on premises which had been conveyed to the defendants. The court said: ''The defendants cannot plead the usury as a defense. They took subject to, and assumed the payment of, the mortgage, and are estopped.'' This is the general rule, because, in such case, defendant has received credit on the purchase price for the existing debt, including the usury, if any.

Mention might also have been made of Hebron Bank v. Gambrell, 116 Miss. 343, 77 So. 148, but the complainant in this case was liable as a partner on some, and as an individual on other, notes on which it was claimed that usury was paid, and the bill involved accounting, fraud, and other questions and ·is not authority for the contention of appellee.

On the other hand, as stated in 66 C. J. 314, the general rule is: ''Since the purpose of the usury acts is to protect the necessitous borrower, or his privies in blood or estate, and not to benefit those who are not, and cannot be, injured by the usurious transaction, the law confines the privilege of claiming this protection to the borrower who has been oppressed and to those in privity with him; the

right to attack a transaction for usury is personal to the borrower, to those in privity with him, and, as sometimes stated, to persons representing the borrower, or to his sureties. So, subject to the general rule recognizing the right of those in privity with, or claiming under, the borrower or debtor to set up usury, a stranger to the usurious contract or transaction, that is, one not a party thereto who cannot be injured by the usurious transaction, or who has acquired no rights based on the usurious contract, usually cannot take advantage of usury; and the view has been expressed that this is true, even though such third person may be affected incidentally by the usurious contract.'' Who are privies is stated in 66 C. J. 317 in these words: "As the rule is sometimes stated, this right to plead usury usually extends to the successors in law of the debtor; thus the debtor's personal representative, his heirs at law, and his assignee or trustee in bankruptcy usually are permitted to take advantage of the usury statutes to the same extent as the borrower or debtor himself. So it has been asserted that a subsequent holder of title to lands subject to a usurious mortgage, who stands quoad hoc in the shoes of the mortgagor, may set up the defense of usury.'' Numerous cases from different states are cited in the footnotes to support these statements. We have read many of them and those read do sustain, under varying circumstances, the stated rules. It would unduly extend this opinion to quote from or analyze them, but we call attention to Schmidt v. Gaukler et al., 156 Mich. 243, 120 N. W. 746; Missouri, Kansas & Texas Trust Company v. Krumseig, 172 U. S. 351, 19 S. Ct. 179, 43 L. Ed. 474 (Minn.); Esposti v. Rivers Brothers, 1929, 207 Cal. 570, 279 P. 423; Ex parte Hiers, 1903, 67 S. C. 108, 45 S. E. 146, 100 Am. St. Rep. 713; Allen v. Petty, 1900, 58 S. C. 240, 36 S. E. 586.

In the action at bar, appellee was a total stranger to these contracts—had no connection whatever with them. He was in nowise affected by the alleged payment of usury. He went about the champertous business of

gathering up these claims for a nominal consideration and suing thereon in his own name to recover the principal and interest of these loans—a profitable business indeed if permitted.

As was said by this Court in Byrd et al. v. Newcomb Mill & Lbr. Co., 118 Miss. 179, 79 So. 100, 101: "The statute protects and safeguards the borrower by penalizing sharply the lender in the usurious contract; but it was not meant to give to the borrower any unjust advantage of the lender. Its good' purpose should not be perverted into a source of legal fraud by borrowers upon lenders. The statute provides the severe penalty of forfeiture of the principal and all interest for its violation, and it must be strictly construed, . . ."

We hold that appellee, as assignee, cannot recover on these claims, but since he appears to have been the borrower upon two of them, the case is reversed and remanded.

Reversed and remanded.

### DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

Unless Chandlee v. Tharp, 161 Miss. 623, 137 So. 540, 78 A. L. R. 445, wherein this Court held that the right of action conferred on a borrower by Section 1946, Code of 1930, to recover the principal of the loan when more than twenty per cent interest per annum had been contracted for or received thereon is not a penalty, survives the death of the borrower and vests in his executor-administrator, is to be overruled, the right of action so conferred is assignable. Chicago, etc., R. Co. v. Packwood, 59 Miss. 280; Anderson v. Kelly (Miss.), 99 So. 382; Wells v. Edwards Hotel & City Railway Co., 96 Miss. 191, 50 So. 628, 27 L. R. A. (N. S.) 404.