# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00914-SCT

*LORI SNEED, ALLISON HUNTER, BRAD CONWILL, UNITED STATES FIRE INSURANCE COMPANY AND NATIONAL UNION FIRE INSURANCE COMPANY, FRED MANNINO AND RUSSELL L. COOK, JR.*

*v.*

*FORD MOTOR COMPANY*

## CONSOLIDATED WITH

## NO. 97-CA-00922-SCT

*LORI SNEED, ALLISON HUNTER, BRAD CONWILL, UNITED STATES FIRE INSURANCE COMPANY, AND NATIONAL UNION FIRE INSURANCE COMPANY*

*v.*

*FORD MOTOR COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/03/97 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRED MANNINO |
| | ALBEN N. HOPKINS |
| | HARRY R. ALLEN |
| | ROBERT C. GALLOWAY |
| ATTORNEYS FOR APPELLEE: | W. WAYNE DRINKWATER |
| | JOHN R. TRIGG |
| | MARK D. HERBERT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 3/31/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/21/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On January 29, 1991, William Hough was driving a 1989 Ford Bronco II on Interstate Highway 55 near Winona, Mississippi. The vehicle was owned by Phillips Building Supply of Gulfport, Inc. Guest

passengers in the vehicle were Lori Sneed, Allison Hunter, and Brad Conwill. ("Plaintiffs"). An accident occurred in which the Bronco II rolled over several times. Lori Sneed was rendered a quadriplegic. Allison Hunter and Brad Conwill were also injured. The Plaintiffs made claims against Hough, Phillips, Allied Building Products, and Hough's parents ("the Insureds") for Hough's negligent operation of the vehicle. The Insureds were insured under liability policies issued by United States Fire Insurance Company and National Union Fire Insurance Company ("the Insurers"). Before suit was filed, the Insurers began settlement discussions with the Plaintiffs.

¶2. Under the terms of the settlement agreement, the Insurers paid their policy limits of $5,000,000. In addition to payment of the policy limits, the Plaintiffs and the Insurers entered into an agreement which provided that the Plaintiffs would sue Ford Motor Company for personal injuries and other damages. According to the agreement, United States Fire Insurance Company would pay for all expenses incurred by the Plaintiffs in prosecution of their action against Ford. Upon recovery of damages by the Plaintiffs, United States Fire Insurance Company would be reimbursed first for expenses paid. Thereafter, a 15% fee would be paid to the Page, Mannino, & Peresich law firm for its representation of the Plaintiffs. The remaining proceeds would be evenly divided between the Insurers and the Plaintiffs until the Insurers had recovered the $5,000,000 paid to the Plaintiffs under the settlement agreement. Finally, the remainder of the proceeds would go to the Plaintiffs for their division.

¶3. On January 27, 1994, the Plaintiffs filed suit against Ford Motor Company in the Circuit Court of Harrison County. After Ford learned of the agreement between the Insurers and the Plaintiffs, Ford filed a Motion to Substitute Real Party in Interest. On April 8, 1997, the trial court granted Ford's motion to add the Insurers as real parties in interest. At that motion hearing, the trial court also issued a *sua sponte* order directing the Plaintiffs, the Insurers, and their attorneys to file the statutory champerty affidavits set out in Miss. Code Ann. § § 97-9-15 and 97-9-17 because it found that the agreement entered into appeared to be champertous. The Plaintiffs, the Insurers, and the attorneys moved for reconsideration of the order.

¶4. On July 3, 1997, the Motion for Reconsideration was denied by the court. The trial court made the following findings:

> The "agreement" entered into by the parties Plaintiff speaks for itself. The individual Plaintiffs have absolutely no control of the litigation, nor do they have any financial investment nor interest in the success of the litigation until all expenses including attorney fees have been deducted. These Plaintiffs are required to accept the appointment of the carriers' attorneys to pursue the litigation and further to accept the decision of these representatives and carriers to either continue the pursuit, or abandon not only the alleged rights of the carriers, but also the rights of these individual Plaintiffs...

> It would appear that this absolute control of the individual Plaintiffs extends to joinder with the carriers in seeking relief from the Court's prior ruling. Since these individual Plaintiffs do, in fact, have a viable cause of action against the Defendant Ford Motor Company, it would appear that the best interest of these parties would be adverse to the carriers when the validity of the "agreement" is in issue. Counsel would be well-advised to consider this potential conflict of interest when representing not only the carrier, but the individual Plaintiff as well...

> It would appear that the parties have ignored the fact that the insurance carriers were strangers to the individual Plaintiffs' causes of action. It was only through a contract of indemnity between their host driver, William Hough, Jr., that the carriers surfaced. These carriers' interest at that point was two-

fold - defend and indemnify Hough for all sums in damages for which he was legally liable. They owed no contractual duty to the injured parties under the policy and were not in any position to use payment as a bargaining "chip" to gain this agreement in settlement. As the liability carrier for Hough, they stood in his shoes as a tortfeasor, and this Court is unaware of any legal precedent in Mississippi which allows a tortfeasor to recover from a joint tortfeasor damages voluntarily paid to an injured party as a result of their joint and several tortious acts. Under the common law, a wrongdoer is not entitled to compel contribution from a joint tortfeasor. This is in accord with the doctrine that if tortfeasors are in *pari delicto*, no indemnity is due to one held separately liable. Therefore a joint tortfeasor's insurer, under this rule, cannot have subrogation...

It would appear from the "agreement" that the current action violates the laws of this State which prohibit champerty and maintenance...

This Court is satisfied that its prior ruling, requiring joinder and filing of affidavits was well founded and should not be disturbed...

¶5. The Plaintiffs, the Insurers, and their attorneys sought interlocutory appeals from the trial court's order, which this Court permitted on December 23, 1997. This case presents a matter of first impression for this Court's review. The Plaintiffs, the Insurers, and their attorneys raise the following issues for this Court's consideration:

**I. THE CIRCUIT COURT ERRED IN FINDING THAT THE AGREEMENT BETWEEN THE ORIGINAL PLAINTIFFS AND THE INSURERS WAS CHAMPERTOUS.**

**II. THE CIRCUIT COURT ERRED IN ORDERING AFFIDAVITS PURSUANT TO SECTIONS 97-9-15 AND 97-9-17 OF THE MISSISSIPPI CODE FOR A NONCHAMPERTOUS AGREEMENT.**

**III. AS APPLIED TO RUSSELL L. COOK, JR. AND COOK, BUTLER & DOYLE, THE LOWER COURT'S ORDER IS ARBITRARY AND CAPRICIOUS AND, THEREFORE, UNCONSTITUTIONAL.**

### DISCUSSION OF LAW

**I. THE CIRCUIT COURT ERRED IN FINDING THAT THE AGREEMENT BETWEEN THE ORIGINAL PLAINTIFFS AND THE INSURERS WAS CHAMPERTOUS.**

**a. THE CIRCUIT COURT ERRED IN ORDERING AFFIDAVITS PURSUANT TO SECTIONS 97-9-15 AND 97-9-17 OF THE MISSISSIPPI CODE FOR A NONCHAMPERTOUS AGREEMENT.**

¶6. Champerty is generally defined as "[a] bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds... ." Black's Law Dictionary 157 (6th ed. 1990). "Champerty is a species of maintenance and that term and 'maintenance' have been used by the courts almost interchangeably." **State ex rel. Carr v. Cabana Terrace, Inc.,** 247 Miss. 26, 153 So. 2d 257, 259 (1963)(*quoting* 10 Am. Jur. *Champerty and Maintenance* § 3 (1964)).

Perhaps the best, because it is the most flexible, definition of maintenance is that it is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it...

153 So. 2d at 259.

¶7. Mississippi has declared champerty and maintenance unlawful. Miss. Code Ann. § 97-9-11 (Rev. 1994), which is entitled **Champerty and maintenance; solicitation and stirring up of litigation prohibited**, provides that:

It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated, either before or after proceedings commenced: (a) to promise, give, or offer, or to conspire or agree to promise, give or offer, (b) to receive or accept, or to agree or conspire to receive or accept, (c) to solicit, request, or donate, any money, bank note, bank check, chose in action, personal services, or any other personal or real property, or any other thing of value, or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court or before any administrative board or other agency, regardless of jurisdiction; provided, however, this section shall not be construed to prohibit the constitutional right of regular employment of any attorney at law or solicitor in chancery, for either a fixed fee or upon a contingent basis, to represent such person, firm, partnership, corporation, group, organization, or association before any court or administrative agency.

¶8. Miss. Code Ann. § 97-9-23 (Rev. 1994), entitled **Champerty and maintenance; exceptions; legislative intent**, provides that:

The provisions of sections 97-9-11 to 97-9-23 shall not be applicable to attorneys who are parties to contingent fee contracts with their clients where the attorney does not pay or protect the client from payment of the costs and expenses of litigation, nor shall said sections apply to suits pertaining to or affecting possession of or title to real or personal property, nor shall said sections apply to suits involving the legality of assessment or collection of taxes, nor shall said sections apply to suits involving rates or charges by common carriers or public utilities, nor shall said sections apply to criminal prosecutions, nor to the payment of attorneys by legal aid societies approved by the Mississippi State Bar.

Nothing in sections 97-9-11 to 97-9-23 is intended to be in derogation of the constitutional right of real parties in interest to employ counsel or to prosecute any available legal remedy. The intent, as herein set out, is to prohibit and punish, more clearly and definitely, champerty, maintenance, barratry, and the solicitation or stirring up of litigation, whether the same be committed by licensed attorneys or by others who are not real parties in interest to the subject matter of litigation.

¶9. In the case *sub judice*, the trial court found that the agreement between the Insurers and the original Plaintiffs appeared to be champertous. The trial court also granted Ford's motion to join the Insurers as real parties in interest and *sua sponte* ordered the Plaintiffs, the Insurers, and their attorneys to file the statutory champerty affidavits. Miss. Code Ann. § 97-9-15 (Rev. 1994) provides, in pertinent part, that:

Every person who commences or prosecutes or assists in the commencement or prosecution of any

proceeding in any court or before any administrative agency in the State of Mississippi, or who may take an appeal from any such rule, order, or judgment thereof, shall on motion made by any of the parties of such proceedings, or by the court or agency in which such proceeding is pending, file with such court or agency, as a condition precedent to the further prosecution of such proceeding, the following affidavit:

I, (_____), petitioner (or complainant, plaintiff, appellant or whatever party he may be) in this matter, do hereby swear (or affirm) that I have neither received, nor conspired to receive, any valuable consideration or assistance whatever as an inducement to the commencement or further prosecution of the proceedings in this matter.

. . . .

Similarly, Miss. Code Ann. § 97-9-17 (Rev. 1994) provides, in pertinent part, that:

Every attorney representing any person, firm, partnership, corporation, group, organization, or association in any proceeding in any court or before any administrative agency in the State of Mississippi, or who may take an appeal from any rule, order, or judgment thereof, shall, on motion made by any of the parties to such proceeding, or by the court or agency in which such proceeding is pending, file, as a condition precedent to the further prosecution of such proceeding, the following affidavit:

I, (_____), attorney representing (_____), petitioner (or complainant, plaintiff, appellant or whatever party he may be) in this matter, do hereby swear (or affirm) that neither I nor, to the best of my knowledge and belief, any other person, firm, partnership, corporation, group, organization, or association has promised, given, or offered, or conspired to promise, give, or offer, or solicited, received, or accepted any valuable consideration or any assistance whatever to said (_____) as an inducement to said (_____) to the commencement or further prosecution of the proceedings herein.

. . . .

¶10. The penalty for filing a false affidavit is contained in Miss. Code Ann. § 97-9-19 (Rev. 1994) which provides that:

Every person or attorney who shall file a false affidavit shall be guilty of perjury and shall be punished as provided by law. Every attorney who shall file a false affidavit, or who shall violate any other provision of sections 97-9-11 to 97-9-23, upon final conviction thereof shall also be disbarred, by order of the court in which convicted. Any attorney who shall file a false affidavit, or violate any other provision of sections 97-9-11 to 97-9-23, and who is not a member of the Mississippi Bar shall, in addition to the other penalties provided by sections 97-9-11 to 97-9-23, be forever barred from practicing before any court or administrative agency of this state.

¶11. Generally, any chose in action is assignable in Mississippi. Miss. Code Ann. §§11-7-3, 11-7-7 (1972) . As early as 1928, this Court held that "any action brought for recovery of damages for the commission of an injury to person or property is a personal action . . . and, of course, would be assignable. *J. H. Leavenworth & Son, Inc. v. Hunter*, 150 Miss. 245, 267, 116 So. 593, 596 (1928). *See also [Kaplan v. Harco National Ins.](), 716 So.2d 673 (Miss. Ct. App. 1998)*, *cert. denied,* June 25, 1998. We find that the agreement at issue constitutes a valid and enforceable assignment under Miss. Code Ann. § 11-7-3

(1972), which provides:

> The assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing. In case of a transfer or an assignment of any interest in such chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the original party, or the court may allow the person to whom the transfer or assignment of such interest has been made, upon his application therefor, to be substituted as a party plaintiff in said action. If in any case a transfer or assignment of interest in any demand or chose in action may be made in writing before or after suit is filed, to an attorney or firm of attorneys, appearing in the case, it shall be sufficient notice to all parties of such assignment or transfer, if such assignment or transfer be filed with the papers in said cause, and such attorney or attorneys shall not be required to be made parties to said suit.

¶12. Ford argues that the fact that Mississippi allows assignment of causes of action does not mean that assignments can never be champertous. Its argument is that the assignment must not only satisfy the requirements of the assignment statute, but the assignment must also avoid champerty. We agree.

¶13. Consequently, the ultimate disposition of the questions before the Court depends on whether the Insurers here have a real and legitimate interest in the individual plaintiffs' claims against Ford, or whether they are more properly characterized as intermeddling strangers who, as a matter of public policy and the proper exercise of judicial power, should be barred from pursuing, encouraging or participating in the action against Ford. If the former is true, the rights granted to the Insurers by the agreements with the Plaintiffs are authorized by the broad language of our statutes allowing the assignment of choses in action. However, if they have no such interest, they are barred by the champerty statutes.

¶14. The Plaintiffs first contend that because the trial court found that the Insurers were real parties in interest, the agreement made falls within the exception contained in Miss. Code Ann. § 97-9-23 (Rev. 1994), and therefore they, the Insurers and their attorneys, should not be required to execute the statutory affidavits. That exception states that "[n]othing in sections 97-9-11 to 97-9-23 is intended to be in derogation of the constitutional right of real parties in interest to employ counsel or to prosecute any available legal remedy." Miss. Code Ann. § 97-9-23 (Rev. 1994).

¶15. The Plaintiffs and the Insurers cite two Mississippi cases to aid in the analysis of who is a stranger to litigation as that term applies to champerty. They assert that these cases explain the rationale behind the statutes which is to prevent "total strangers" to a lawsuit from soliciting the right of action for the purpose of stirring up litigation. Ford asserts that both cases are inapposite because they were usury cases, one of which was decided 15 years prior to the enactment of the champerty statutes.

¶16. The first case is ***Fry v. Layton,*** 191 Miss. 17, 2 So. 2d 561 (1941). In ***Fry,*** Layton borrowed money from Fry at an alleged usurious rate of interest. Before suing Fry, Layton contacted 18 other borrowers and for one dollar each, bought the notes each had supposedly paid to Fry. Layton, as assignee, then sued Fry in circuit court for the principal and interest on these notes, including the two notes he had paid to Fry. A verdict and judgment were entered for Layton by the circuit court. ***Fry,*** 2 So. 2d at 562. On appeal, this Court discussed numerous cases from other jurisdiction in which it had been held that usury is personal to the debtor and his privies. The Court denied recovery on the notes to Layton stating:

> In the action at bar, appellee was a total stranger to these contracts- had no connection whatever with

them. He was in nowise affected by the alleged payment of usury. He went about the champertous business of gathering up these claims for a nominal consideration and suing thereon in his own name to recover the principal and interest of these loans--a profitable business indeed if permitted.

*Fry*, 2 So. 2d at 565.

¶17. The second case is another usury case, *Liddell v. Litton Sys., Inc.,* 300 So. 2d 455 (Miss. 1974). In that case, Liddell filed a class action lawsuit alleging that the Litton credit union had charged a usurious rate of interest. Liddell attempted to distinguish his case from *Fry* on the basis that his suit was brought on behalf of and for the benefit of the unnamed borrowers who allegedly paid a usurious interest rate. *Liddell,* 300 So. 2d at 457. The Court was unpersuaded by Liddell's argument, and stated that:

[i]f the right to invoke the highly penal forfeiture provisions of the usury laws cannot be assigned even by an instrument in writing as was done in *Fry*, then it logically follows that such right cannot be invoked by a stranger on behalf of a borrower who has no knowledge of the impending litigation and who may or may not appreciate the acts of his would-be benefactor. . . .

*Id.*

¶18. The United States District Court for the Southern District of Mississippi addressed the issue of whether an assignment of a mortgagee's bad faith lawsuit to the mortgagor constituted champerty in *Stephen R. Ward, Inc. v. USF&G,* 681 F. Supp. 389 (S.D. Miss. 1988). The analysis in *Ward* is instructive on the question of whether the Insurers are strangers to the present litigation. In examining that issue, in *Ward* the court said:

For the actions of the plaintiffs to be considered champertous, there must be some evidence that the assignor's right of action was purchased by the plaintiffs and that the plaintiffs have no other interest in the litigation but for the assignment. Assuming that the theory of champerty and maintenance can be applied in situations other than where lawsuits are purchased outright, it is this Court's opinion that such an application should not be made in this case. It is obvious that the plaintiffs are *not* strangers to this litigation and that they have asserted an interest in this action separate and distinct from the interests of Pine Belt.

*Id.* at 396-97 (emphasis in original and footnote omitted).

¶19. In *Ward* the Wards purchased real property in Hattiesburg, which property was insured by USF&G. Pine Belt was the mortgagee. The property was damaged by a fire, and a dispute arose between the Wards and USF&G as to whether the insurance policy was still in effect. Pine Belt assigned its rights to any claims and/or causes of action against USF&G to the Wards. *Id.* at 391. USF&G alleged that the assignment was champertous, against public policy, and that Pine Belt was a real party in interest and should have been joined in the litigation. *Id.* at 396.

¶20. The court found that the assignment was valid under Miss. Code Ann. § 11-7-3 (1972) and that it was not champertous because the Wards were not strangers to the litigation. The court found that the Wards "have asserted an interest in this action separate and distinct from the interests of Pine Belt." 681 F. Supp. at 397.

¶21. Black's Law Dictionary defines "real party in interest" as:

Person who will be entitled to the benefits of action if successful, that is, the one who is actually and substantially interested in subject matter as distinguished from one who has only a nominal, formal, or technical interest in or connection with it. Under the traditional test, a party is a "real party in interest" if it has the legal right under the applicable substantive law to enforce the claim in question...

Black's Law Dictionary 874 (6th ed. 1990) (citation omitted).

¶22. At the time of the settlement here the Insurers and their insureds had a real and substantial interest in the allocation of responsibility among the plaintiffs and all potential defendants. Prior to suit, through negotiations, the individual plaintiffs and Hough and Phillips Building Supply along with their insurers, were able to reach a settlement which would greatly reduce the plaintiffs' risk as well as that of those defendants. Likewise, the insurers were faced with the choice of settling for policy limits or possibly subjecting their insureds and themselves to liability in excess of those limits. It has been said in the past that " public policy favors settlement, and a partial settlement is better than none at all." *McBride v. Chevron USA*, 673 So. 2d 372, 380 (Miss. 1996). In *W. J. Runyon & Son, Inc. v. Davis*, 605 So. 2d 38, 43 (Miss. 1992), this Court declared that "[i]t offends no policy of this state to allow a plaintiff to snatch the bird in hand, then pursue the one in the bush as well."

¶23. This case is distinguishable from *Fry, supra* where a champertous stranger bought other borrowers' claims. Although neither the Insurers nor their Insureds have a formal right of contribution from Ford, a non-settling joint tortfeasor, the Insurers are not disinterested strangers. This is not the kind of trafficking in lawsuits that the common law of champerty was designed to forbid, but rather a sensible attempt by the Insurers to see that payment for a loss occasioned by joint tortfeasors is distributed among those tortfeasors.

¶24. Therefore, we conclude that the Insurers are not strangers to the present litigation, but in fact have real interests in not bearing the full cost of Plaintiffs' injuries in circumstances where a non-settling tortfeasor potentially shares fault for these injuries.

¶25. The trial judge in the present case has by order required Plaintiffs and their counsel to submit affidavits swearing that they have neither given nor received any consideration or assistance as an inducement to commence or further the litigation. This, of course, they cannot do. An affidavit in the limited statutory language would be false. However, the quoted limiting provisions of section 23 apply as fully to the sections requiring the affidavits as to the other provisions of the enactment. In the present case, Ford argues that *State ex rel. Carr v. Cabana Terrace, Inc*., 247 Miss. 26, 153 So. 2d 257 (1963), stands for the proposition that no preliminary finding of possible champerty is required to invoke the affidavits. In fact, the question was not raised by the appellant or addressed by the Court in *Carr*. There, the plaintiffs when ordered to submit affidavits simply failed to respond and failed to respond to the defendant's later motion to dismiss. Here, the plaintiffs sought reconsideration of the order and finally, with the trial court's certification, submitted the question to this Court for interlocutory consideration. The only decision of this Court addressing the issue of the proper remedy for the failure of the parties to file the affidavits is the *Cabana Terrace* case. In that case where the complainants failed to file the affidavits in compliance with a court order, and where the lower court dismissed the case, this Court affirmed. *Cabana Terrace,* 153 So. 2d at 261. However, as stated before, in that case the complainants had made no attempt to show to the court that they were exempt from the execution of the affidavits. *Id.* at 260.

¶26. It thus appears that section 23, which was adopted with section 11 and those sections requiring affidavits, limits their application to actions of those other than real parties in interest to the subject matter, that is, parties who do not have a legitimate legal or equitable interest in the matter. See Miss. Laws, 1956 § 2049-03 ch. 253 for structure of original enactment.

¶27. Recognizing the long established policy of encouraging settlements, even partial settlements, agreements with potential defendants who have a legitimate interest in the allocation of responsibility should not be declared champertous. The historical condemnation of champerty and maintenance is grounded in the estimable purpose of preventing the marketing of lawsuits where the parties might, but for the commerce in claims reach an amicable or at least mutually satisfactory settlement. However, where the settling parties both already have a vital interest to protect, the champerty statutes, including those requiring affidavits, do not have a proper application.

¶28. Certainly if litigation continues or is commenced after the agreement is reached between the settling parties, they cannot be allowed to impose procedures and rights in the continuing litigation which will deprive the trial court of its proper role. Thus, the agreements are certainly subject to scrutiny by the trial judge, and there may be provisions which must be subordinated to a fair presentation of the facts and a recognition that other defendants who are not parties to the agreement are not be prejudiced. Nothing in the decision of the interlocutory appeal here before this Court should be construed as limiting the trial judge's role in that respect.

¶29. We find that the Plaintiffs did not bring their action due to inducement by or assistance from the Insurers. They had a lawful remedy against Ford from the time the single vehicle accident occurred, and while they did not file suit against the insureds, they pressed for settlement against the driver of the vehicle and Ford and reached the subject agreement with the Insurers. They did not need any inducement to sue Ford, other than the possibility of recovering full compensation for their injuries. Finally, and perhaps most importantly, whether or not the subject agreement is champertous is not a defense to Ford. This Court explained in *Calhoun County v. Cooner,* 152 Miss. 100, 118 So. 706, 707 (1928) that:

> ...the fact that there is a champertous contract in relation to the prosecution of the suit between plaintiff and his attorney, or between plaintiff and another layman, in no wise affects the obligation of defendant to plaintiff. It is the champertous contract and not the right of action itself which the contract avoids, and, therefore, defendant cannot avail himself of the champertous agreement as a defense to the action. Conversely the law against champerty and maintenance cannot be used as offensive weapons against defendant.

*(quoting* 11 C.J. § 2, p. 270). If we had determined the agreement at issue to be champertous, then it would have been a void contract under the laws of the State of Mississippi. But that would not have had any bearing on the rights of the Plaintiffs to continue the prosecution of their action.

### III. AS APPLIED TO RUSSELL L. COOK, JR. AND COOK, BUTLER & DOYLE, THE LOWER COURT'S ORDER IS ARBITRARY AND CAPRICIOUS AND, THEREFORE, UNCONSTITUTIONAL.

¶30. This issue is moot in light of the Court's decision.

### CONCLUSION

¶31. We hold that the settlement agreement at issue is not a champertous contract and is a valid assignment of a chose in action. The Plaintiffs, the Insurers and their attorneys are not required to execute the statutory champerty affidavits. The decision of the trial court is therefore reversed and this cause is remanded for further proceedings consistent with this opinion.

¶32. **REVERSED AND REMANDED.**

**BANKS, McRAE, MILLS AND WALLER, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. SULLIVAN, P.J., NOT PARTICIPATING.**

### PRATHER, CHIEF JUSTICE, DISSENTING:

¶33. I must respectfully dissent. In my view, the agreement in the present case clearly falls under the statutory definition of champerty, and the trial court was correct in so ruling. As noted by the majority, Miss. Code Ann. § 97-9-11 (Rev. 1994), **Champerty and maintenance; solicitation and stirring up of litigation prohibited**, provides that:

> It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated, either before or after proceedings commenced: (a) to promise, give, or offer, or to conspire or agree to promise, give or offer, (b) to receive or accept, or to agree or conspire to receive or accept, (c) to solicit, request, or donate, any money, bank note, bank check, chose in action, personal services, or any other personal or real property, or any other thing of value, or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court or before any administrative board or other agency, regardless of jurisdiction; provided, however, this section shall not be construed to prohibit the constitutional right of regular employment of any attorney at law or solicitor in chancery, for either a fixed fee or upon a contingent basis, to represent such person, firm, partnership, corporation, group, organization, or association before any court or administrative agency.

In my view, this statute could not be clearer that the Legislature intended to prohibit the "stirring up of litigation" through offers to provide "any thing of value" in order to file "any proceeding in any court." It is clear that the Legislature took pains to phrase § 97-9-11 in exceptionally broad language so as to prohibit the sort of agreement which the parties have reached in the present case. The majority correctly notes that Miss. Code Ann. § 97-3-23 provides exceptions and limitations to § 97-9-11, but none of those exceptions may be considered applicable to the agreement in the present case.

¶34. At issue in the present case is whether United States Fire Insurance Company ("the insurer") has in fact agreed to provide "anything of value" or "any other assistance as an inducement to any person to commence ... any proceeding in any court." The majority correctly summarizes the nature of the agreement between the insurer and insureds as follows:

> According to the agreement, United States Fire Insurance Company would pay for all expenses

incurred by the Plaintiffs in prosecution of their action against Ford. Upon recovery of damages by the Plaintiffs, United States Fire Insurance Company would be reimbursed first for expenses paid. Thereafter, a 15% fee would be paid to the Page, Mannino, & Peresich law firm for its representation of the Plaintiffs. The remaining proceeds would be evenly divided between the Insurers and the Plaintiffs until the Insurers had recovered the $5,000,000 paid to the Plaintiffs under the settlement agreement. Finally, the remainder of the proceeds would go to the Plaintiffs for their division.

The insurer has thus agreed to, among other things, pay all of the insureds' expenses in filing suit against Ford and to share with the insured the proceeds resulting from this lawsuit. In my view, it is abundantly clear that this agreement constitutes "inducement" on behalf of the insurer for the insured to "commence any action" against Ford.

¶35. Moreover, it is apparent that the agreement in the present case constitutes much more than the mere encouragement of litigation by the insurer. The agreement provides that:

> Each of the Plaintiffs agree to cooperate fully with each other and with U.S. Fire and National Union in the prosecution of the Plaintiffs' claims against Ford Motor Company and others. Should any of the Plaintiffs fail to cooperate in the prosecution of the Plaintiffs' claims against Ford Motor Company and others, they shall be estopped to collect any payments under the terms of this agreement.

It is thus apparent that the insurer is not merely encouraging the litigation in the present case; rather, it is actively directing the litigation. Although the mere encouragement of and assistance in litigation is sufficient to bring the facts of the present case within the statutory definition of champerty, it is clear that the insurer has assumed a role in the present case which goes far beyond "stirring up" litigation.

¶36. My conclusion in this regard is strengthened by the fact that the plaintiffs themselves have refused to state under oath that they have not entered into a champterous agreement, as the term is defined under statute. Under this State's statutory champtery scheme, the signing of the statutory affidavits is a necessary pre-requisite in every nonexempt civil case in which they are requested. I find Ford's arguments in this regard to be persuasive:

> No ambiguity exists in the champtery statutes. On motion or on order, the affidavits are mandatory for all plaintiffs and their counsel in every nonexempt civil suit. There can be no uncertainty over the content of the required affidavits. Their form is legislatively prescribed. Finally, the fact that the Legislature itself has drafted the affidavits defeats any possible claim that their content is somehow contrary to the legislative intent. ... It is neither burdensome nor unfair to require the affidavits. They are no more than certifications, made by persons with complete knowledge of the facts, that the action does not violate the champtery statutes. In the present case, Plaintiffs and their attorneys were asked only to state under oath what they have repeatedly stated in argument: that the Agreement is not champterous.

I agree with Ford that the Plaintiffs' refusal to sign the affidavits drafted by the Legislature constitutes further indication that the agreement is in fact champterous, under the statutory definition of the term.

¶37. The majority distinguishes the facts of the present case on the basis that the insurer is, supposedly, not a stranger to the litigation, but rather a real party in interest. I can not agree. United States Fire Insurance Company has no right of contribution and no theory of recovery against Ford Motor Company whatsoever.

Following its settlement with the Plaintiffs, the insurer is, in every sense of the word, a stranger to any subsequent litigation which the Plaintiffs might choose to bring against Ford. Furthermore, it is apparent that any decision on the part of the Plaintiffs to sue Ford should have been their decision alone.

¶38. Respectfully, I dissent from the majority's finding that "the Plaintiffs did not bring their action due to inducement by or assistance from the Insurers." Indeed, an analysis of the agreement between the insurer and insureds renders this conclusion highly suspect. At any rate, assuming *arguendo* that the majority is correct, then this Court should have no hesitance to declare the agreement between the insurer and insureds to be void, but to permit the Plaintiffs to continue their suit in their individual capacity[1]. I would permit the plaintiffs the opportunity to proceed with their suit against Ford in their individual capacity, but without their insurer's assistance as set forth in the champterous agreement. Assuming that the plaintiffs are unwilling to do so, then it will be obvious that the plaintiffs have, in fact, filed suit against Ford based on the assistance and encouragement of their insurer. I respectfully dissent.

**SMITH, J., JOINS THIS OPINION.**

1. In my view, this Court should allow the plaintiffs' suit in their individual capacity to relate back to the original filing for statute of limitations purposes.