# United States Court of Appeals for the Fifth Circuit

————————

No. 23-60537

————————

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2024

Lyle W. Cayce
Clerk

Caleb Crabtree; Adriane Crabtree,
*as assignees of the claims of Casey Cotton*,

*Plaintiffs—Appellants*,

*versus*

Allstate Property and Casualty Insurance Company;
John Does 1-5,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:22-CV-348

———————————————————————

Before Smith, Wiener, and Douglas, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:[*]

This appeal requires us to decide whether Mississippi's champerty statute, Miss. Code Ann. § 97-9-11 (Rev. 2013), voids an assignment of a cause of action to a disinterested third party. Finding it difficult to make a reliable *Erie* guess, we certify the following question to the Supreme Court of

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60537

Mississippi:

> Does MISS. CODE ANN. § 97-9-11 (Rev. 2013) allow a creditor in bankruptcy to engage a disinterested third party to purchase a cause of action from a debtor?

I.

Casey Cotton rear-ended Caleb Crabtree, causing Crabtree extensive injuries. Cotton was insured by Allstate, but Crabtree's injuries exceeded Cotton's policy limit, meaning that Cotton risked liability for the excess should he be found at fault. Allegedly, Allstate refused to settle with Crabtree and did not inform Cotton of those settlement negotiations or of Cotton's potential personal liability. Those failures gave Cotton a potential claim for bad faith against Allstate.

Crabtree and his wife sued Cotton, who declared bankruptcy. The bankruptcy court allowed the personal-injury action to proceed to trial, and the Crabtrees were awarded over $4 million. That made the Crabtrees judgment creditors in the bankruptcy proceeding. Cotton's bad-faith claim against Allstate was classified as an asset of the bankruptcy estate. To facilitate a settlement between the Crabtrees and Cotton concerning the personal-injury judgment, the bankruptcy court allowed the Crabtrees to purchase Cotton's bad-faith claim for $10,000.

The Crabtrees, however, could not afford the $10,000 up-front, so they engaged Court Properties, L.L.C., to assist with financing. Court Properties paid the bankruptcy trustee $10,000 to acquire the bad-faith claim, then assigned that claim to the Crabtrees in exchange for $10,000 plus interest at 8% with repayment contingent on successful recovery from Allstate. The Crabtrees sued Allstate in the action now on appeal, asserting Cotton's bad-faith claim.

The district court dismissed that action for lack of subject matter

jurisdiction. It held that the assignment of Cotton's claim to Court Properties and Court Properties's assignment to the Crabtrees were champertous and hence void under § 97-9-11. Thus, it found that the Crabtrees lacked Article III standing because, absent Cotton's bad-faith claims, the Crabtrees had not suffered any injury at Allstate's hands.

The Crabtrees appealed, averring that (1) champerty is not available to Allstate as a defense to its suit, or, alternatively, (2) the assignments at issue were not champertous.

## II.

"Champerty is generally defined as a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Sneed v. Ford Motor Co.*, 735 So. 2d 306, 309 (Miss. 1999) (cleaned up). Entering a champertous agreement is a crime in Mississippi. *See* Miss. Code Ann. § 97-9-13 (Rev. 1956). Furthermore, a champertous agreement is "a void contract under the laws of the State of Mississippi." *Sneed*, 735 So. 2d at 315.

But "whether or not the subject agreement is champertous is not a defense to" a civil action. *Id.* at 314. Indeed, "the fact that there is a champertous contract in relation to the prosecution of the suit between plaintiff and his attorney, or between plaintiff and another layman, in no wise affects the obligation of defendant to plaintiff." *Calhoun Cnty. v. Cooner*, 118 So. 706, 707 (Miss. 1928) (internal quotation marks and citation omitted).

That means that, under Mississippi law, where an agreement is deemed champertous, the parties to that agreement are subject to criminal prosecution and cannot enforce the agreement against each other. But a champertous agreement between a plaintiff and a third party does not impact the merits of the underlying cause of action, meaning the defendant cannot

invoke champerty as a defense to that underlying action.

Allstate avers that Cotton's assignment of his bad-faith claims to Court Properties and Court Properties's subsequent assignment to the Crabtrees were champertous. The Crabtrees counter that the champertous nature of those assignments is irrelevant to the merits of their claim against Allstate. If this case were in state court, the Crabtrees would be correct—Allstate's liability on the bad-faith claim is in no way impacted by champertous assignments of that claim. *See id.* But if the assignments are champertous, then they are void, and a "void contract" is "null from the beginning." *Home Base Litter Control, L.L.C. v. Claiborne Cnty.*, 183 So. 3d 94, 101 (Miss. Ct. App. 2015) (internal quotation marks and citation omitted). So, if either Cotton's assignment to Court Properties or Court Properties's assignment to the Crabtrees is void, the Crabtrees do not lawfully possess Cotton's bad-faith claim.

Absent that bad-faith claim, the Crabtrees have not "plausibly allege[d] an injury in fact that is fairly traceable to the challenged action of" Allstate. *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (cleaned up). Allstate has not wronged the Crabtrees—it has allegedly breached its policy agreement with Cotton. Allstate's supposed bad-faith did not injure the Crabtrees, and, absent the assignments, they do not have Article III standing to recover on Cotton's claim.[1]

The Crabtrees' right to recover from Allstate on a potentially void contract is a legal fiction created by state law divorced from any actual injury they suffered. And, for the purposes of Article III, a state "may not simply

---

[1] *Cf. Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks and citation omitted)).

enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 426 (2021) (internal quotation marks and citations omitted).

Therefore, though Allstate cannot raise champerty as a merits defense, it is free to aver that the doctrine deprives the Crabtrees of Article III standing to sue Allstate. If either Cotton's assignment to Court Properties or Court Properties's assignment to the Crabtrees is champertous and therefore void, the Crabtrees do not lawfully possess Cotton's claim, meaning Allstate's bad-faith has not injured them, and they lack standing to sue on that ground. So, this case may proceed in federal court if and only if both assignments were valid under § 97-9-11.

That dispositive issue, however, is easier to tee up than it is to answer. Mississippi's champerty statue is verbose and difficult to construe. It reads,

> It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated from this state or any other state, either before or after proceedings commenced: (a) to promise, give, or offer, or to conspire or agree to promise, give, or offer, (b) to receive or accept, or to agree or conspire to receive or accept, (c) to solicit, request, or donate, any money, bank note, bank check, chose in action, personal services, or any other personal or real property, or any other thing of value, or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court or before any administrative board or other agency, regardless of jurisdiction; provided, however, this section shall not be construed to prohibit the constitutional right of regular employment of any attorney at law or solicitor in chancery, for either a fixed fee or upon a contingent basis, to represent such

person, firm, partnership, corporation, group, organization, or association before any court or administrative agency.

MISS. CODE ANN. § 97-9-11 (Rev. 2013). To the best of our understanding, the statute generally prohibits "any person [or] firm" from "giv[ing]" or "reciev[ing]" "any[thing] of value" "as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding." *See id.*

All agree that *Sneed* is the seminal Mississippi champerty case. *Sneed* cited § 97-9-11, but also put forth general formulations of the doctrine, defining champerty "as a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." 735 So. 2d at 309 (cleaned up).[2] That definition and the statute, however, needed to be balanced against the fact that, "[g]enerally, any [cause of] action is assignable in Mississippi." *Id.* at 311 (citation omitted).

That required *Sneed* to determine where an "assignment . . . satisf[ies] the requirements of the assignment statute" yet "avoid[s] champerty." *Id.* *Sneed* held that the validity of the assignment "depends on whether the [person facilitating the litigation] ha[s] a real and legitimate interest in the individual plaintiff's claims . . . or [is] more properly characterized as [an] intermeddling stranger[] who, as a matter of public policy and the proper exercise of judicial power, should be barred from pursuing, encouraging, or participating in the action." *Id.*

So, to deem an otherwise valid assignment of a cause of action cham-

---

[2] *See also id.* (describing champerty as "an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." (internal quotation marks and citations omitted)).

pertous, "there must be some evidence that the assignor's right of action was purchased by the plaintiffs and that the plaintiffs have no other interest in the litigation but for the assignment." *Id.* at 312 (quoting *Stephen R. Ward, Inc. v. U.S. Fid. & Guar. Co.*, 681 F. Supp. 389, 396 (S.D. Miss. 1988)).

Allstate avers, and the district court agreed, that Cotton's assignment to Court Properties was champertous because Court Properties gave value to Cotton to purchase his cause of action, despite not being a real party in interest to the Court Properties-Allstate dispute. Court Properties's actions appear to violate the text of § 97-9-11, as it bought Cotton's cause of action solely to assign it to the Crabtrees, thereby "assisting [them] to commence" this proceeding. Miss. Code Ann. § 97-9-11 (Rev. 2013). And Court Properties did not have a "real and legitimate interest" in the bad-faith claim because it was a "disinterested stranger[]" that had no stake in Cotton's bad-faith claim or the bankruptcy proceeding. *See Sneed*, 735 So. 2d at 311, 313.

Things become far murkier, however, when we consider that Court Properties purchased the cause of action as the Crabtrees' designee. The Crabtrees have a real and legitimate interest in Cotton's bad-faith claim as creditors of Cotton's bankruptcy estate. Because the bad-faith claim is an asset of the bankruptcy estate, the Crabtrees have a "real and substantial interest in" liquidating that asset by litigating the claim. *Id.* at 313. Thus, if the Crabtrees had purchased the bad-faith claim directly, the assignment would likely not have been champertous under *Sneed*. That begs the question whether, if the Crabtrees could purchase the cause of action directly, do *Sneed* and § 97-9-11 truly prohibit an indirect purchase via a designee that provides financing?

The financing arrangement in this case does not strike us as the type of "officious intermeddling" or "trafficking in lawsuits" that *Sneed* was concerned with prohibiting "as a matter of public policy and the proper exercise

of judicial power." 735 So. 2d at 309, 311, 313 (internal quotation marks and citation omitted). And the one case the parties cite where the Supreme Court of Mississippi deemed an assignment champertous is factually distinct. *See Fry v. Layton*, 2 So. 2d 561 (Miss. 1941).

In that case, Fry issued numerous usurious promissory notes, making him liable for penalties on a per-note basis. *See id.* at 562. Layton held two of the notes but wanted to maximize his recovery by increasing the amount Fry owed, so he purchased notes from eighteen other borrowers for one dollar each and sued Fry on all the notes. *See id.* at 562–63. The Mississippi Supreme Court decried the "champertous business of gathering up these claims for a nominal consideration and suing thereon." *Id.* at 565. *Fry* is distinct because Court Properties purchased only a single cause of action at the direction of a real party in interest with no intention of prosecuting the suit itself. In other words, Layton was much more plainly "trafficking in lawsuits" impermissibly than Court Properties was. *Sneed*, 735 So. 2d at 313.

In sum, we face a difficult and unsettled question of state law where the text of § 97-9-11 appears to be in tension with the Supreme Court of Mississippi's formulation and application of the champerty doctrine. Accordingly, we consider whether certification is appropriate.

## III.

The Mississippi Supreme Court has discretion to accept a certified question where "questions or propositions of law . . . are determinative of all or part of that [case] and there are no clear controlling precedents." Miss. R. App. P. 20(a). We consider three factors when deciding whether to certify a question:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to

be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Johnson v. Miller*, 98 F.4th 580, 585 (5th Cir. 2024) (internal quotation marks and citation omitted).  Here, all three factors favor certification.

First, as discussed above, "[a]n *Erie* guess in these circumstances would be a leap into the dark." *Id.* at 586.  The tension between the text of § 97-9-11 and *Sneed* and *Fry* deprive us of state-court guidance on whether § 97-9-11 voids the assignment in this case.  A ruling in favor of Allstate appears faithful to the text of § 97-9-11 but would be in tension with how *Sneed* and *Fry* formulated and applied the champerty doctrine.  And a ruling in favor of the Crabtrees is likely consistent with the purpose of champerty and the principles articulated in *Sneed* and *Fry* but runs afoul of § 97-9-11's text.  That lack of "clear controlling precedents" counsels in favor of certification. Miss. R. App. P. 20(a).

Second, champerty is an underdeveloped area of law in Mississippi.  Few Mississippi cases have cited § 97-9-11.  Despite that lack of attention, the resolution of this question and clarification of when parties may assign causes of action could have major implications for the booming litigation-funding industry.[3]  "[F]ederal-to-state certification is prudent when consequential state-law ground is to be plowed . . . ." *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020).  Thus, considerations of comity counsel in favor of certifying this question.

Third, and finally, we are unaware of any practical limitations to

---

[3] *Cf. Odell v. Legal Bucks, L.L.C.*, 665 S.E.2d 767, 775 (N.C. Ct. App. 2008) (discussing champerty in the context of litigation-funding agreements and collecting cases on that topic).

certification.  This question is wholly collateral to Cotton's bankruptcy proceeding, and, though Allstate would be unable to raise champerty as a merits defense, Allstate may invoke the doctrine to aver that the Crabtrees lack Article III standing to sue Allstate.  Therefore, this question is well presented and ripe for decision.

All three factors favor asking the Supreme Court of Mississippi to weigh in.

\* \* \* \* \* \*

For the reasons explained, we CERTIFY the following question to the Supreme Court of Mississippi:

> Does MISS. CODE ANN. § 97-9-11 (rev. 2013) allow a creditor in bankruptcy to engage a disinterested third party to purchase a cause of action from a debtor?

We disclaim any intention or desire that the Court confine its reply to the precise form or scope of the question certified.  We transfer to the Supreme Court of Mississippi the record and appellate briefs.  This panel retains cognizance of this appeal pending response from the Supreme Court of Mississippi.